[Crim. No. 25803. Second Dist., Div. Five. June 4, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD RAY GARRINGER, Defendant and Appellant.

**COUNSEL**

Allan M. Rosenthal, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Shunji Asari, William R. Weisman and Frederick R. Millar, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

HASTINGS, J.—Defendant was charged by information with possession for sale of secobarbital in violation of section 11378 of the Health and Safety Code. He pleaded not guilty. Jury trial commenced. Part way through the case-in-chief the court granted the People's motion to dismiss the information insofar as it charged possession for sale of a controlled substance, retaining the lesser included charge of simple possession of a controlled substance. The People were further allowed to amend the information to substitute phenobarbital for secobarbital as the designated controlled substance. A motion for acquittal (Pen. Code, § 1118.1) was denied. The jury found defendant guilty of possession of phenobarbital (Health & Saf. Code, § 11377) as charged in the amended information. Probation was denied. Defendant was committed to the California Youth Authority. He appeals from the judgment.

Los Angeles Deputy Sheriff Marco was on patrol in La Puente at about 11 p.m., March 25, 1974. He observed defendant staggering badly as he walked along the street. Marco saw defendant fall to the ground, get up after several seconds, and continue staggering. Marco was in a patrol car as he made these observations. Defendant looked in Marco's direction, then placed a light colored object he had been holding in his hand, under his shirt. Marco got out of his car and approached defendant. Defendant's eyes were dilated, red and watery. His speech was slurred and incoherent. His balance was unsteady. He smelled of alcohol. Marco decided defendant was unable to care for his own safety or that of others. He arrested him for drunkenness. (Pen. Code, § 647, subd. (f).) Marco had defendant place his hands on the hood of the patrol car so that he could conduct a pat down search for offensive weapons. As Marco began the search defendant moved his right hand from the hood to the area of his waist. The deputy grabbed defendant's hand. Defendant said, "Don't fuck with my stash." Marco pulled defendant's hand away from his waist and observed that he was clutching a brown paper bag. Marco took the bag away from defendant, looked inside and found several plastic bags containing small red capsules and 13 foiled wrapped packages containing red capsules, all resembling secobarbital or "reds." There was a total of 1,600 capsules.

Deputy Copping testified that he interviewed defendant at the police station at 8 a.m., March 26, 1974, after first advising defendant of his constitutional rights and securing appropriate waivers. (*Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].)

Defendant told Copping that someone named Rocky had given him the red capsules to deliver to an Andy Morales at the corner of Hacienda and Unruh. Andy was to give defendant $150 for delivering the pills.

Defendant appeared to Copping to be speaking voluntarily, otherwise the deputy would not have talked to him. Copping did not know at the time he spoke to defendant that defendant had received emergency medical treatment after his arrest. Defendant did not appear to Copping to be injured at the time of their conversation. He was not bloody or swollen. At the conclusion of the interview defendant mentioned that his tooth had been chipped in some sort of "hassle," but Copping did not know if this was true or not.

It was during examination of Copping that the prosecutor first revealed that chemical analysis had shown the contraband to be phenobarbital rather than secobarbital. Out of the presence of the jury the motion to amend the information was argued and granted. When trial resumed Copping, who had 15 years' experience as a narcotics officer, testified that he had not seen phenobarbital packaged in the manner of People's Exhibit 1 until 4 or 5 months before this trial, and then on only a few occasions. When he looked at People's Exhibit 1, the capsules appeared to him to be sodium secobarbital. They were packaged in the manner in which sodium secobarbital is packaged. Phenobarbital normally is found in the form of pills, as opposed to secobarbital which is in capsule form. On the few recent occasions on which Copping had found phenobarbital in capsule form he discovered that the contraband was phenobarbital only after chemical analysis was performed. Prior to receiving the chemist's report he had assumed the items to be secobarbital.

Walter Krstulja testified that he was the chemist who had analyzed People's Exhibit 1. He found that the capsules contained phenobarbital. Phenobarbital is a derivative of barbituric acid. Secobarbital is also a derivative of barbituric acid.

Defendant testified in his own behalf that he found the bag of capsules (People's Exh. 1) underneath a car as he knelt on the street to tie his shoe. He saw the capsules through a hole in the bag. He knew the capsules were "some kind of drugs, and [he] figured they were reds." Defendant wanted to turn the capsules over to the sheriff's department. He decided to telephone the sheriff's station. He had approached a nearby house intending to ask permission to use the telephone when a

sheriff's car pulled into the driveway. He told the deputy, "I found this fucking . . . stash," and tried to give him the bag, but he was handcuffed and taken to the station.

Defendant further testified that when he first talked to Copping, he told him that he had found the capsules and was going to call the police about them. Copping accused him of lying. Defendant therefore made up a different story which he told to the deputy. He did not remember this second story, but Copping did not believe it either, so he told him a third story, the version to which Copping testified, which was also a lie, but which defendant knew Copping would believe. Defendant did this because he wanted to get out of the interview room because he was in a lot of pain from his chipped teeth. Copping did not make any promises of leniency or reward to defendant to induce the lie which he told. Copping advised him of his right to remain silent before questioning him. The entire conversation lasted about 15 minutes. His teeth were chipped when an officer applied a choke hold to him, preparatory to conducting a skin search, and he passed out and fell to the floor. Defendant had received medical treatment for his injury before talking to Copping. Defendant had a civil suit pending against the sheriff's department as a result of this incident.

On rebuttal, Copping testified that defendant told him only one story during their interview, the one the deputy had earlier related to the jury. Defendant had said nothing about finding the contraband beneath a car.

Deputy Quinn testified that he was the jailer on duty when defendant was brought to the sheriff's station. Defendant was drunk. He was staggering and challenging everyone in the station to fight. Quinn placed a choke hold on him to subdue him so that he could be searched. After the search defendant wrenched free and fell to the floor, chipping his tooth. He was taken to Doctors' Hospital as a result.

■ On this appeal defendant contends: (1) that his confession was coerced and should not have been admitted in evidence; (2) that he was denied due process when the People were permitted to amend the information; and (3) that the jury was improperly instructed on the definition and elements of the charge of possession.

Defendant did not seek at the trial level to exclude the confession on the ground that it had been made involuntarily.[1] Nonetheless, the People

---

[1]He did object that the corpus delicti had not been established at the time the People sought to introduce the confession. This objection was properly overruled.

do not dispute that the issue is reviewable on appeal. (*People* v. *Underwood*, 61 Cal.2d 113, 121 [37 Cal.Rptr. 313, 389 P.2d 937]; *People* v. *Trout*, 54 Cal.2d 576 [6 Cal.Rptr. 759, 354 P.2d 231, 80 A.L.R.2d 1418].)

Taking defendant's version of what transpired at face value, he told Copping an untruthful story which he knew the officer would believe because he was in a lot of pain from his chipped teeth. He was aware of his constitutional rights at the time he made the statement. He had already received medical treatment. The officer made no promises to him to induce the statement. He did not claim that he advised the officer that he was in pain or that the officer was or should have been aware of that fact. The entire conversation lasted 15 minutes. It took place about eight hours after he chipped his teeth.

According to the officer, defendant bore no outward signs of injury. He mentioned that he had chipped his teeth only at the conclusion of the interview. Copping contradicted defendant's testimony that he had told the officer three different stories. The circumstances of the interrogation, viewed in their totality (*Fikes* v. *Alabama*, 352 U.S. 191 [1 L.Ed.2d 246, 77 S.Ct. 281]), do not present a picture of coercive pressure such as would render the confession inadmissible.

■ With respect to defendant's second contention, it does not constitute a denial of due process to permit amendment of an information during trial if the amendment does not change the nature of the offense charged nor prejudice the defendant's rights. (*People* v. *Huerta*, 148 Cal.App.2d 272, 275 [306 P.2d 505].) ■ The information herein originally charged defendant with possession for sale of a controlled substance in violation of section 11378 of the Health and Safety Code. As amended it charged him with possession of a controlled substance in violation of section 11377 of the Health and Safety Code, a lesser included offense to that originally charged. Since defendant was already in jeopardy of conviction of the lesser included offense at the time of the amendment, the amendment cannot be regarded as having changed the nature of the offense nor as having prejudiced defendant's rights.

Nor was it improper to permit amendment of the information to specify phenobarbital rather than secobarbital. Both substances are barbituric acid derivatives. Both are controlled substances as defined by section 11056, subdivision (b) (1) of the Health and Safety Code. The

punishment for possession of one is identical to punishment for possession of the other. Defendant knew, both before and after the amendment of the information, that he was being tried for possession of specific capsules comprising People's Exhibit 1. If, instead of amending the information, the People had moved for a mistrial and then refiled charging defendant with possession of phenobarbital, defendant undoubtedly would have objected that he had already once been placed in jeopardy for having had in his possession the exact same items in violation of precisely the same code section. Alteration of the information to reflect different narcotic properties in the capsules than originally alleged did not change the nature of the offense.

The fact that defendant may have been surprised to learn that the capsules were phenobarbital, not secobarbital, did not prejudice his rights since his defense to the amended charge was identical to that he had to the original charge, namely: that he had not "possessed" the item at all within the meaning of the statute. (See, *People* v. *Mijares,* 6 Cal.3d 415 [99 Cal.Rptr. 139, 491 P.2d 1115].) The court offered defense counsel a continuance for purposes of further preparation if the amendment made one necessary. Defense counsel did not take advantage of the proffered opportunity. The court acted properly in permitting the amendment.

■ Finally, defendant contends that the jury was improperly instructed as to the elements of possession. The jury was instructed as follows:

"Every person who unlawfully possesses any controlled substance; such as *Phenobarbital,* is guilty of a crime.

"To constitute the illegal possession of a controlled substance, it must be established:

"1. That the defendant exercised control or had the right to exercise control over the controlled substance;

"2. That the defendant had knowledge of its presence;

"3. That the defendant had knowledge of its nature as a controlled substance; and

"4. That the substance was in an amount sufficient to be used as a controlled substance.

"Items 2 and 3 of the definition of the offense of possession of a controlled substance require knowledge of the presence of the controlled substance and knowledge of its nature as a controlled substance.

"In determining whether the defendant had such knowledge, and in determining whether the defendant had the criminal intent which must be proved, you may consider his state of intoxication, if any, together with all the other evidence bearing on these questions.

"Secobarbital and phenobarbital are both controlled substances. It is no defense to the charge of possession of phenobarbital that the defendant believed he possessed secobarbital. If the proof shows that the defendant knew that he possessed a controlled substance but believed it was secobarbital when the substance was actually phenobarbital, he is not relieved of criminal responsibility by reason of this mistake on his part in identifying the chemical nature of the controlled substance possessed by him."

It is the language of the last paragraph that forms the basis for defendant's objection. He argues that he could not properly be convicted of possessing phenobarbital unless he knew that what he possessed was phenobarbital.

We disagree. A person who intends to possess a controlled substance, believes he possesses a controlled substance, and in fact possesses a controlled substance is guilty of violating section 11377 of the Health and Safety Code. The only knowledge that is required to sustain the conviction is knowledge of the controlled nature of the substance. (*Russell* v. *Superior Court,* 12 Cal.App.3d 1114, 1117 [91 Cal.Rptr. 255].) The defendant need not know the chemical name or the precise chemical nature of the substance. Any more stringent rule as to knowledge would, for all practical purposes, make the statute inapplicable to anyone who had not personally performed a chemical analysis of the contraband in his possession. Needless to say, such was not the Legislature's intent.

The judgment is affirmed.

Kaus, P. J. and Stephens, J., concurred.