[Crim. No. 34086. Second Dist., Div. Five. June 6, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
PETER STEELE GUY, Defendant and Appellant.

**COUNSEL**

Barry Tarlow and Richard Fannan for Defendant and Appellant.

George Deukmejian, Attorney General, Robert E. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, John R. Gorey and Michael Nash, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

HASTINGS, J.—Defendant Peter Steele Guy was charged with and convicted of possession of phencyclidine (PCP) for sale in violation of Health and Safety Code section 11378.

On the day of defendant's arrest, Officers Demas and Dell, two motorcycle policemen, were monitoring traffic with radar on Beverly Glen Boulevard. Defendant's car was clocked traveling 42 miles per hour in a 30-mile-per-hour zone. Officer Dell stepped in front of defendant and signalled for him to pull over. Defendant swerved around the officer and kept on going. Both officers followed defendant. Defendant struck a parked car but kept on going. He stopped only upon coming to a dead end. He then jumped out, opened his trunk and began rummaging inside. Officer Demas ordered defendant to stop. When defendant did not comply, the officer drew his gun, pointed it at defendant, and repeated the order. Defendant flung several articles to the ground and dropped to the ground himself, howling, barking and pleading with Jesus to spare his life.

Officer Dell handcuffed defendant and defendant's female passenger. Officer Demas picked up a small wooden box from near defendant's car door. The officer felt that the box had been ejected by defendant from

the vehicle trunk. Inside the box, Officer Demas observed a green leafy substance resembling marijuana.

Officer Demas proceeded to the trunk of the car which was still open. Inside he viewed a two-foot by three-foot plastic baggie containing something white. He lifted the baggie. It felt like it contained a pliable powdery substance. At that point he believed he was holding either cocaine or heroin. Opening the baggie, Officer Demas observed a white crystalline powder resembling cocaine or a controlled substance. Actually it was a pound of PCP. Defendant was arrested for possession of a controlled substance and was transported to UCLA Hospital by ambulance.

At trial defendant testified on his own behalf. He claimed that on the day in question he saw a plastic baggie containing a white powdery substance in a trash can near his apartment. He tasted some of the powder thinking it might be cocaine. Defendant had tried cocaine on several occasions. After tasting the substance, defendant felt the onset of an unusual feeling. Alarmed, he picked the bag out of the trash, put it in his trunk and started to drive to UCLA Hospital. The next thing he remembered was waking up at the hospital. He recalled nothing that occurred in the interim.

On appeal defendant contends: (1) that the search of his car was not justified, (2) that the court failed to properly instruct the jury as to the requisite knowledge element of the crime, (3) that the court improperly admitted the marijuana evidence, (4) that the court failed to instruct the jury as to the proper use of the marijuana evidence, and (5) that the court failed to give defendant's theory of the case instruction.

MOTION TO SUPPRESS

Pursuant to Penal Code section 1538.5, defendant moved to suppress the one pound baggie of PCP. His motion was denied, and he appeals contending this contraband was discovered by means of an illegal search. This contention has no merit.

Officers Demas and Dell had probable cause to believe defendant was intoxicated. Although his cavorting on the ground and his condition prevented the officers from performing any tests, defendant's wild driving and odd behavior at the scene would reasonably lead ob-

servers to conclude defendant was under the influence of drugs. We are not swayed by defendant's argument that the officers could not reasonably arrest him for driving under intoxication because his behavior could have been symptomatic of mental illness or a head injury. "Reasonable cause has been generally defined to be such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." (*People* v. *Ingle* (1960) 53 Cal.2d 407, 412 [2 Cal. Rptr. 14, 348 P.2d 577].) Certainly, defendant's behavior, considering what would appear to the ordinary observer as a desperate attempt to dispose of or retrieve items from the trunk, was not as consistent with illness or injury as it was with drugs.

Armed with the belief defendant was intoxicated, Officer Demas had the right to conduct a reasonable search for intoxicants in the *interior* of defendant's car. (*People* v. *Superior Court* (*Kiefer*) (1970) 3 Cal.3d 807, 813, fn. 2 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559].) The question here is whether the officer could search the trunk. Defendant says no, that *Kiefer* draws the limit at the interior. We disagree. In acknowledging probable cause exists to search the interior of a car where there is an arrest for driving under the influence, the *Kiefer* court does not say probable cause will never exist to search elsewhere. As a matter of fact, the Supreme Court makes it clear that the permissible scope of search varies with the particular circumstances in each case.

Furtive action like flight from the scene of a crime may well be an expression of consciousness of guilt providing probable cause to search. (*People* v. *Superior Court* (*Kiefer*), *supra*, 3 Cal.3d 807, 817.) **(1c)** In view of the fact defendant had attempted to elude the police by extremely dangerous driving, his fussing with the contents of the trunk could be given a guilty connotation warranting a search.[1] Probable cause to search the trunk was only reinforced—not established—by discovery of the marijuana.[2] (*People* v. *Superior Court* (*Kiefer*), *supra*, at p. 819; *People* v. *Mosco* (1963) 214 Cal.App.2d 581,

---

[1]We reject defendant's point of view that his wild rummaging in the trunk, being so irrational, required speculation to construe it as an attempt to hide anything. Although not as surreptitious as most concealment efforts, his gestures were consistent with the guilty conscience of a person out of control.

[2]Since it was reasonable to conclude defendant had abandoned this box in a public place, Officer Demas as a matter of law, had the right to open it. (*People* v. *Ketchum* (1975) 45 Cal.App.3d 328 [119 Cal.Rptr. 368]; *People* v. *Stafford* (1972) 28 Cal.App.3d 405 [104 Cal.Rptr. 754]; *People* v. *Harris* (1971) 15 Cal.App.3d 498 [93 Cal.Rptr. 285].)

585-586 [29 Cal.Rptr. 644].) Finding the box of marijuana on the ground next to defendant's car, Officer Demas had reason to infer defendant's flinging of objects had been an attempt to rid the trunk of contraband, including this box.[3] In sum, we find Officer Demas was entitled to search the trunk.

The final objection defendant has to the admission of the PCP baggie is the failure of the officers to obtain a warrant to search and seize it. Assuming arguendo that probable cause existed to search the trunk and even the baggie, defendant contends a search warrant was necessary before the officer could even lift out the baggie. He argues that at the point of feeling the baggie, a warrantless search of closed personal effects took place, prohibited under *United States* v. *Chadwick* (1977) 433 U.S. 1 [53 L.Ed.2d 538, 97 S.Ct. 2476], *People* v. *Minjares* (1979) 24 Cal.3d 410 [153 Cal.Rptr. 224, 591 P.2d 514], and *People* v. *Pace* (1979) 92 Cal.App.3d 199 [154 Cal.Rptr. 811]. We do not agree a warrant was necessary to touch the baggie. Defendant's logic so emasculates the right to search an automobile where probable cause exists that it becomes nothing more than the right to view what is in plain sight—which is no search at all. Neither *Chadwick* nor *Minjares* ended the automobile exception to the warrant requirement.

Citing the *Chadwick* genre of cases, defendant also objects to Officer Demas' opening of the baggie and peering in without a search warrant. Upon lifting the baggie, Officer Demas was able to conclude it contained a controlled substance.[4] The *Chadwick, Minjares* and *Pace* cases dealt with searches of closed personal effects where the contents remained unascertained until the container was opened. Where that is the case, "a person's expectations of privacy...are substantially greater

---

Finding the marijuana did not void probable cause to search the trunk, as defendant suggests. There is no indication defendant had finished with the contents of his trunk, and, indeed, he stopped rummaging therein only when Officer Demas drew his gun.

[3]Contrary to defendant's assertion, the facts of this case do not correspond to those in *People* v. *Norman* (1975) 14 Cal.3d 929 [123 Cal.Rptr. 109, 538 P.2d 237], where a defendant's attempt to discard an object occurred only upon command to "drop it or die" and where the court held the subsequent search invalid. Defendant here was not ordered to fling the box aside.

[4]In light of all the circumstances, a prudent man of Officer Demas' training and experience could reasonably believe the container held contraband. Officer Demas had served as an officer for nine years at the time, had made approximately two dozen arrests for cocaine and heroin, and had received formal training in narcotics. The baggie he saw in defendant's car resembled packaging he had been taught was used in the drug trade. Moreover, he had been trained in identification of controlled substances that came in powdery form.

than in an automobile." (*United States* v. *Chadwick, supra*, 433 U.S. 1, 13 [53 L.Ed.2d 538, 549]; *People* v. *Minjares, supra*, 24 Cal.3d 410, 418.) Since the contraband here was virtually in plain sight once the baggie was in hand, we find that expectations of privacy in the container were no greater than in the automobile. To insist the officer should have obtained a search warrant before opening the baggie to further identify the powder would be unreasonable. The contraband was in plain sight. "To hold otherwise, would be to 'magnify technicality at the expense of reason.'" (*People* v. *Childs* (1970) 4 Cal.App.3d 702, 709 [84 Cal.Rptr. 378], citing *People* v. *Kampmann* (1968) 258 Cal.App.2d 529, 533 [65 Cal.Rptr. 798].)

Thus, we conclude the baggie containing PCP was found during a legal search and the motion to suppress was properly denied.

## KNOWLEDGE INSTRUCTION

■ Defendant next contends that the court should have instructed the jury that the prosecution had to prove defendant knew the controlled substance he possessed was PCP.[5] Defendant reasons that because he did not know the drug was PCP, "he did not have the requisite knowledge" to be convicted of possession of PCP for sale under Health and Safety Code section 11378.[6] This position has been rejected in *People* v. *Garringer* (1975) 48 Cal.App.3d 827 [121 Cal.Rptr. 922].[7]

---

[5]As a corollary to this, defendant argues that the instruction given was an incorrect statement of the law. At the request of the prosecution the court gave this instruction: "Cocaine and phencyclidine are both controlled substances. It is no defense to the charge of possession of phencyclidine that the defendant believed he possessed cocaine. If the proof shows that the defendant knew that he possessed a controlled substance but believed it was cocaine, when the substance was actually phencyclidine, he is not relieved of criminal responsibility by reason of this mistake on his part in identifying the chemical nature of the controlled substance possessed by him."

[6]Defendant contends the proper approach would be to charge and convict for possession of the drug a defendant testifies he believed he possessed. Defendant here testified he thought the baggie contained cocaine. In view of the fact possession of PCP for sale carried a penalty of sixteen months, two years or three years at the time of his arrest (Health & Saf. Code, § 11378) while possession of cocaine for sale was punishable by two, three or four years, (Health & Saf. Code, § 11351) it is obvious defendant was not prejudiced by his conviction of the former.

[7]*People* v. *Garringer, supra*, 48 Cal.App.3d 827, involved a defendant who mistook phenobarbital for secobarbital. Possession of either drug is proscribed by Health and Safety Code section 11377.

Defendant challenges any reliance on *Garringer* for two reasons: One, the opinion cites a case that does not specifically address the knowledge issue. Two, *Garringer*, he argues, is limited to its facts, i.e., the situation where the drug a defendant believes he possesses is punished under the same code section as the drug he actually possesses.

In that case the court wisely determined that knowledge for the purpose of conviction under Health and Safety Code section 11377, is knowledge of the controlled nature of the substance and not its precise chemical composition. Although the *Garringer* court dealt with mere possession rather than possession for sale, the knowledge element is the same. In sum, the trial court properly instructed the jury as to the requisite knowledge for Health and Safety Code section 11378.

### MARIJUANA: ADMISSIBILITY AND SUA SPONTE INSTRUCTION

Defendant's next two contentions focus on the marijuana in the wooden box which was introduced into evidence.

■ Firstly, defendant complains the marijuana was irrelevant to any issue as well as being prejudicial. In support of his introduction of the marijuana, the prosecutor stated he expected there would be testimony that PCP was used in marijuana cigarettes.[8] Testimony of a link between marijuana and PCP would be circumstantial evidence that defendant knowingly possessed the PCP and did not stumble across it in a trash can.[9] Furthermore, admission of the marijuana had a very small prejudicial effect, if any. The jury already had reason to believe defendant was interested in drugs at the time of his arrest; defendant testified he tasted the PCP to see if it was cocaine. We hold the court properly admitted the evidence.

---

We are not swayed by defendant's reasoning. Not only does the *Garringer* rationale survive any weakness in case precedent, but it also transcends its peculiar factual situation. The court's reasoning was as follows: "The only knowledge that is required to sustain the conviction is knowledge of the controlled nature of the substance. [Citation.] The defendant need not know the chemical name or the precise chemical nature of the substance. Any more stringent rule as to knowledge would, for all practical purposes, make the statute inapplicable to anyone who had not personally performed a chemical analysis of the contraband in his possession. Needless to say, such was not the Legislature's intent." (*People v. Garringer, supra,* 48 Cal.App.3d 827, 835.) Moreover, *Garringer* expressed what has been implicit before; in many cases where evidence could not prove a defendant's knowledge of the specific drug, courts have found sufficient evidence of knowledge. (See, e.g., *People v. Showers* (1968) 68 Cal.2d 639 [68 Cal.Rptr. 459, 440 P.2d 939]; *People v. Padilla* (1971) 15 Cal.App.3d 1010 [93 Cal.Rptr. 554].)

[8]There was testimony to this effect given by a defense witness in response to questioning by defense counsel. Although this testimony was not evoked by the prosecution, it was introduced nevertheless.

[9]Defendant's admission that he had used cocaine sometime in the past did not specifically refute defendant's story on how he came to possess the PCP. As a matter of fact, the prior cocaine use was essential to defendant's claim he did not knowingly possess the PCP.

■ Secondly, defendant claims the judge should have instructed the jury *sua sponte* on the limited use for which the marijuana had been introduced. The law is clear that absent a request by a party, there is no duty to give an instruction limiting the purpose for which evidence may be considered. (*People v. Richards* (1976) 17 Cal.3d 614, 618-619 [131 Cal.Rptr. 537, 552 P.2d 97]; *People v. Nudd* (1974) 12 Cal.3d 204, 209 [115 Cal.Rptr. 372, 524 P.2d 844].) Defendant insists his case should be treated differently because (1) he opposed the introduction of the evidence and in requesting a limiting instruction would have conceded its admissibility, and (2) he was unsure of the purpose for which the marijuana was introduced and could not propose an instruction.

It is sheer nonsense to say defendant had to choose between a posture contesting admissibility and a request for a limiting instruction. In the two Supreme Court cases holding a party must request an instruction limiting use of evidence, the admissibility of the evidence was discussed and resolved on appeal, too. (*People v. Richards, supra,* 17 Cal.3d 614; *People v. Nudd, supra,* 12 Cal.3d 204.)

As far as defendant being in the dark as to the relevance of the marijuana, the record contradicts this assertion of ignorance. Defendant proposed an instruction limiting consideration of the evidence to the knowledge issue. But for the fact defendant withdrew it, the judge would have given the instruction and defendant would have been protected from any misuse of the evidence.

In conclusion nothing defendant says persuades this court that the court below had a *sua sponte* duty to give a limiting instruction.

### THEORY OF THE CASE INSTRUCTION

■ Defendant's final argument on appeal is that the trial judge refused to give defendant's "theory of the case" instruction.[10] Defendant

---

[10]"DEFENDANT'S PROPOSED INSTRUCTION NUMBER 7

"Peter Guy's theory of the case is that he found the drug and that he did not possess with intent to sell. Mr. Guy does not have the burden of proving that he did find it or knowledge of the narcotic. The prosecution must prove all of the elements of the offense beyond a reasonable doubt. In determining whether this defense raises a reasonable doubt in your mind as to Mr. Guy's guilt, you may consider the following:

"Mr. Guy's testimony that he found the narcotic;

"Mr. Guy's testimony that he did not possess the drug for sale;

"Dr. Siegal's testimony that PCP manufacturers are known to discard batches of the drug;

relies on *People* v. *Guzman* (1975) 47 Cal.App.3d 380, 387 [121 Cal.Rptr. 69], to support his position. In *Guzman* the court held that "a defendant is entitled to an instruction directing the jury's attention to evidence from the consideration of which reasonable doubt of defendant's guilt might be engendered." (P. 387.) Specifically, the court held it was error to refuse a defendant's request for specific instruction on *factors* that affect eyewitness identification testimony. Defendant's request here for an instruction listing specific *facts* supporting his position is very different. The *Guzman* instruction merely intoned considerations any jury must make in evaluating any eyewitness identification.[11] On the other hand, defendant's requested instruction is a prohibited "en-

---

"Dr. Siegal's testimony that PCP is relatively inexpensive to manufacture;

"Dr. Siegal's testimony that PCP dealers and manufacturers are more likely to control their intake of the drug than an inexperienced user;

"Officer Reeves' testimony that he formed the opinion that this drug was cocaine;

"Dr. Siegal's conclusion that Mr. Guy was acting in a manner symptomatic of PCP use;

"Dr. Siegal's conclusion that the amount of PCP Mr. Guy alleges he took was consistent with his later actions;

"Dr. Siegal's testimony that a person who had tried cocaine a few times could have mistaken PCP for cocaine;

"Such other evidence presented during the trial that tends to raise a reasonable doubt in your mind of Mr. Guy's guilt. *People* v. *Guzman*, 47 C.A.3d 380 (1975)."

[11]*Instruction No. 1*

"One of the most important issues in this case is the identification of the defendants as the perpetrators of the crime. The state has the burden of proving identity beyong [*sic*] a reasonable doubt. Therefore, you, the jury, must be satisfied beyong [*sic*] a reasonable doubt of the accuracy of the identification of a defendant before you can convict him. If you are not convinced beyond a reasonable doubt that the defendant was the person who committed the crime, you must find the defendant not guilty.

"Identification testimony is an expression or belief or impression by the witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense and to make a reliable identification later.

"In appraising the identification testimony of a witness, you should consider the following:

"1. Are you convinced that the witness had the capacity and an adequate opportunity to observe the offender?

"Whether the witness had an adequate opportunity to observe the offender at the time of the offense will be affected by such matters as how long or short a time was available, how good were lighting conditions, whether the witness had occasion to see or know the person in the past.

"2. Are you satisfied that the identification made by the witness subsequent to the offense was the product of his own recollection? You may take into account both the strength if [*sic*] the identification, and the circumstances under which the identification was made.

"If the identification by the witness may have been influenced by the circumstances under which the defendant was presented to him for identification you should scrunitinize [*sic*] the identification with great care. You may also consider the length of time

deavor to force the court to indicate an opinion favorable to the defendant as to the effect of such facts, by incorporating them into instructions containing a correct principle of law." (*People* v. *Hill* (1946) 76 Cal.App.2d 330, 342 [173 P.2d 26].) The request for the instruction was properly denied.

The judgment is affirmed.

Kaus, P. J., and Ashby, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 30, 1980.

---

that lapsed between the occurrence of the crime and the next opportunity of the witness to see defendant as a factor bearing on the reliability of the identification.

"You may also take into account that an identification made by picking the defendant out of a group of similar individuals is generally more reliable than one which results from the presentation of the defendant alone to the witness.

"3. You may take into account any occasions in which the witness failed to made [*sic*] such an identification of defendant or make [*sic*] an identification that was inconsistent with his identification at trial.

"4. Finally, you must consider the credibility of each identification witness in the same way as any other witness, consider whether he is truthful, and consider whether he had the capacity and opportunity to make a reliable observation on the matter covered in his testimony.

"I again emphasize that the burden of proof on the prosecutor extends to every element of the crime charged, and this specifically includes the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crime with which he stands charged. If after examining the testimony, you have a reasonable doubt as to the accuracy of the identification you must find the defendant not guilty."