[Crim. No. 39344. Second Dist., Div. Four. Sept. 23, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
LAWRENCE EDWARD HAINES, Defendant and Appellant.

COUNSEL

Gerald Z. Schissell, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Andrew D. Amerson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WOODS, J.**—Defendant appeals from his conviction for two counts of violation of Penal Code section 459, burglary, following his plea of guilty. The plea was entered after the court denied defendant's motion to suppress evidence, the propriety of which ruling is challenged on appeal. ■ He also contends that his confession was obtained in vio-

lation of *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], and should not have been admitted in evidence. For reasons which we explain hereafter, only the search and seizure issue will be addressed by this court.

The record does not reflect that any certificate of probable cause was filed herein. Rule 31(d) of the California Rules of Court prohibits the taking of an appeal from a judgment of conviction entered upon a plea of guilty, unless a certificate of probable cause has been obtained and filed pursuant to Penal Code section 1237.5, except that an appeal may be taken which challenges the ruling on a search and seizure issue raised pursuant to Penal Code section 1538.5. No certificate of probable cause having been filed herein, only appellant's contentions with respect to the section 1538.5 search and seizure motion may be reached on appeal.

"Given the accused's guilty plea, an extrajudicial statement relating to his guilt of a charged crime does not, by reason of a claim that it was involuntarily or improperly induced, raise an issue on appeal based on 'constitutional, jurisdictional or other grounds going to the legality of the proceedings' resulting in the plea." (*People* v. *DeVaughn* (1977) 18 Cal.3d 889, 896 [135 Cal.Rptr. 786, 558 P.2d 872].)

We do not reach appellant's contention with respect to the alleged *Miranda* violation.

The facts concerning the assertedly illegal search and seizure are as follows:

On or about April 8, 1980, at about noon, Stephen Gomez was a police officer for the City of El Monte assigned to the special narcotics and burglary task force. At that time, he saw appellant in the rear carport area of an apartment complex located at 3815 Baldwin Street in El Monte. The officer was in uniform, working with a partner, in a marked vehicle. He immediately recognized appellant as a known burglar and narcotics addict. He knew appellant by name. The officers saw a Chevrolet station wagon parked at the carport, protruding about half way out. Appellant was standing next to the open car door; a woman was sitting behind the wheel. Appellant looked toward the officers and walked swiftly out of their sight into the carport area, carrying a small brown paper bag with something square inside it.

The officer described the carport area as a parking facility for a very large apartment complex. There were no garage doors or any type of security; there were concrete partitions separating each car space. In each carport there was a large closet-type storage bin with doors, attached to one wall.

Within two or three seconds, appellant reemerged and got into the Chevrolet, which drove away. The officers noticed that the registration had expired on the rear license plate and stopped the car. The officers arrested the female passenger for being under the influence of heroin, but did not detain the two male occupants of the vehicle. The officers then drove back to the carport area, and Officer Gomez entered appellant's carport.[1] The doors to the storage bin were open. Inside the bin he saw the brown paper bag on a shelf. He retrieved the bag, opened it and found a personalized checkbook.

It was ultimately discovered that the checkbook had been stolen; appellant's fingerprints were matched to those recovered from the burglarized premises, leading to his arrest.

■ Appellant contends that the search of the storage bin without a warrant was unlawful, no exigency existing which would justify the officer's entry into the carport; and that the opening of the paper bag was an unjustifiable intrusion into appellant's privacy. As to the latter contention, we agree.

I

With respect to appellant's first contention, we do find justification for the officer's entry into the carport and seizure of the brown paper bag. In *People* v. *Mijares* (1971) 6 Cal.3d 415 [99 Cal.Rptr. 139, 491 P.2d 1115], the Supreme Court noted that those who, fearing they are about to be apprehended, remove contraband from their immediate possession may be violating section 135 of the Penal Code, forbidding the destruction or concealment of evidence. (To the same effect see *People* v. *Fields* (1980) 105 Cal.App.3d 341, 346 [164 Cal.Rptr. 336].) A number of cases have ruled that furtive action, such as flight from the

---

[1] The woman who was arrested, Christina Morales, testified that she and Haines both lived in the building at 3815 Baldwin, and that the carport in question was the one assigned to appellant Haines.

scene of a crime or an attempt to hide contraband, provides probable cause to search. (See, e.g., *People* v. *Superior Court* (*Kiefer*) (1970) 3 Cal.3d 807, 817 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559]; *People* v. *Guy* (1980) 107 Cal.App.3d 593, 598 [165 Cal.Rptr. 463].)

In the instant case, when the officers first saw appellant behind the carport, they recognized him as a known burglar and heroin user whom they had kept under surveillance some months earlier. When, on seeing the police car, appellant disappeared into the carport and reappeared without the brown paper bag, the officers regarded his conduct as furtive and became suspicious that he had deliberately concealed the bag. If the officers had undertaken a search at that point, they would have been acting on a mere hunch or suspicion. However, after arresting appellant's companion for being under the influence of narcotics, they felt justified in returning to the carport to search for the bag which they now believed contained narcotics or narcotic paraphernalia. The officers then had probable cause to make the search and some exigency existed, in that had they not done so, it is possible that appellant would have returned and retrieved the bag and this evidence might have been destroyed.

In *People* v. *Superior Court* (*Reilly*) (1975) 53 Cal.App.3d 40 [125 Cal.Rptr. 504], officers who had defendants under surveillance were standing outside a motel room and could see through partially opened curtains. When one of the defendants spotted the police officers, he immediately put into a desk drawer a wallet, some photographic material, and other papers which became incriminating on a forgery charge. Once lawfully inside the room, the officers opened the drawer and seized the evidence. The court held: "[W]e have no hesitancy in ruling that where the suspect, in fear of imminent disclosure or arrest, is observed to secrete an article, which if left in plain sight would have been subject to seizure, there is no constitutionally unreasonable search or seizure in retrieving that article from the place where the suspect was observed to have placed it." (*Id.*, at p. 48.)

However, these cases only justify the officer's retrieval of the bag from the shelf. They do not deal with the propriety of opening the bag to view its contents. Whether the officer had that right, without first obtaining a search warrant, is contingent upon whether the appellant retained a reasonable expectation of privacy with respect to the contents of the paper bag after having inartfully secreted it on the shelf of the

storage bin.[2] (See *People* v. *Dalton* (1979) 24 Cal.3d 850 [157 Cal.Rptr. 497, 598 P.2d 467].)

In *People* v. *Ketchum* (1975) 45 Cal.App.3d 328, 330 [119 Cal.Rptr. 368], defendant, who noticed that he was being observed by police officers, concealed the box he was carrying under some bushes in a yard he was walking past. The officers retrieved the box. The court said: "The question is not whether Ketchum harbored an expectation of privacy. The question is whether such an expectation would be reasonable [citations]. We hold Ketchum did not have a reasonable basis for expecting privacy for his effects when placed under bushes in a stranger's yard."

In *City of St. Paul* v. *Vaughn* (1975) 306 Minn. 337 [237 N.W.2d 365], police followed a suspect into a dry cleaning establishment and saw him tuck something under the counter. The police retrieved the item, an eyeglass case, and found narcotics inside. Though defendant had discarded the case in a location to which any member of the public had equal access, he contended it could not be said to be abandoned, because his intention was merely to hide the case for later retrieval. The court said: "The distinction between abandonment in the property-law sense and abandonment in the constitutional sense is critical to a proper analysis of the issue. In the law of property, the question, as defendant correctly states, is whether the owner has voluntarily, intentionally, and unconditionally relinquished his interest in the property so that another, having acquired possession, may successfully assert his superior interest. [Citation.] In the law of search and seizure, however, the question is whether the defendant has, in discarding the property, relinquished his reasonable expectation of privacy so that its seizure and search is reasonable within the limits of the Fourth Amendment. [Citation.] In essence, what is abandoned is not necessarily the defendant's property, but his reasonable expectation of privacy therein." (*Id.*, at pp. 370-371; fn. omitted.)

We do not believe, in the case before us, that appellant can be said to have relinquished the paper bag under circumstances which indicate that he retained no justified expectation of privacy in it. This was after all the appellant's carport and his storage bin. There was a dispute in the evidence as to whether the storage bin doors were open or closed. The trial court concluded that the doors were open, and we accept that finding. However, one does not have to close and lock a storage bin in a

---

[2]There is no contention that the bag itself was evidence independent of its contents. (*Guidi* v. *Superior Court* (1973) 10 Cal.3d 1 [109 Cal.Rptr. 684, 513 P.2d 908].)

privately owned garage or carport in order to perfect or retain an expectation of privacy therein.

It is clear that closed personal effects, otherwise lawfully seized, may not be searched in the absence of exigent circumstances where the owner can claim an objectively reasonable expectation of privacy in the closed container. Once the bag had been seized, there was no longer any exigent circumstance. The owner of the bag was not being arrested; he had not even been detained.

One case has held that a brown paper bag is not the type of container in which one has a reasonable expectation of privacy. (*People* v. *Fick* (1980) 107 Cal.App.3d 892 [166 Cal.Rptr. 106].) We cannot concur. There is a segment of our society who carry their important personal effects in Gucci brief cases and Hermes bags, but there are many who find it necessary to transport their goods in brown paper bags. We decline to conclude that the nature of this container is determinative of the owner's privacy expectations. Justice Newsom observed in *People* v. *Suennen* (1980) 114 Cal.App.3d 192, 206, footnote 8 [170 Cal.Rptr. 677]: "If extended comparison of the relevant expectations of privacy in cups and bags, sandwich wrappers, shoe boxes and shaving cases seems eccentric or frivolous, we can only reply that the Founding Fathers, in framing the Fourth Amendment, laid upon us this sometimes heavy burden, and that while the containers are often trivial the interests at stake in a free society are not."

We believe under the circumstances of this case that appellant had not abandoned this property and that an objectively reasonable expectation of privacy may be claimed with respect to the contents of this paper bag. No exigent circumstance existing as to the contents of this container, the officer had ample time to obtain a warrant before inspecting the contents of the bag and should have done so.

The judgment is reversed.

Kingsley, Acting P. J., and McClosky, J., concurred.

A petition for a rehearing was denied October 16, 1981, and respondent's petition for a hearing by the Supreme Court was denied December 16, 1981.