[No. A053822. First Dist., Div. Two. May 21, 1992.]

In re BARAKA H., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
BARAKA H., Defendant and Appellant.

## COUNSEL

R. E. Scott for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Laurence K. Sullivan and René A. Chacón, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KLINE, P. J.**—Baraka H. appeals from a dispositional order of the juvenile court predicated on a finding that he possessed marijuana for sale. Appellant contends that the court erred by denying his motion to suppress evidence consisting of marijuana taken from a paper bag found at the time of his arrest. We find no convincing evidence that defendant possessed a reasonable expectation of privacy in the bag at the time of the search. Accordingly, we affirm.

## BACKGROUND

About 4:15 p.m. on January 7, 1991, undercover Oakland Police Officer Orozco watched appellant from an unmarked car parked on the east curb of 73rd Avenue. Appellant was standing on the southeast corner of 73d and Hamilton, 30 to 40 feet in front of Officer Orozco, flagging down cars. Three times in ten minutes, a car so hailed would stop on the west side of the street, pointed southbound, and appellant would approach the driver. After a short conversation appellant would walk back to the street corner, where a crumpled paper bag was sitting on the ground, among some leaves, in a small grass area next to a ramp leading to a walkway passing over Hegenberger Road. The bag was hidden from traffic on the north side of Hamilton, but visible from 73d Avenue. Appellant would reach into the bag, then put it back on the ground. Returning to the driver's window, he would receive money in apparent exchange for something too small to be seen by the officer. He would then return to his original location, hand the money to another male, and wait for the next car to pass by.

Based on Officer's Orozco's radio report of apparent ongoing narcotics sales, uniformed Officers Smith and Rae came to the scene and arrested appellant. Officer Orozco directed Officer Smith by radio to the brown paper bag. The bag contained eight small Ziplock packages containing what appeared to be marijuana.

The district attorney filed subsequent and supplemental petitions under Welfare and Institutions Code sections 777 and 602, alleging that appellant had possessed marijuana for sale.[1] Appellant moved under Welfare and Institutions Code section 700.1 to suppress the evidence from inside the paper bag on the ground that its discovery and seizure violated his Fourth Amendment rights. Appellant's trial counsel conceded that officers could seize the bag, but contended that they could not open and search it without a warrant. The deputy district attorney replied that appellant had "abandoned" the bag, at least at those points when he walked away from it to complete a transaction or flag down another prospective buyer. The court rejected this argument, finding it logically inconsistent with the basic charge that appellant possessed the marijuana contained in the bag. Nonetheless the court denied the motion, acceding to defense counsel's characterization of

---

[1] A second count, added by amendment, alleged that appellant again possessed marijuana on March 26, 1991, subsequent to the events described above. This count is apparently unaffected by this appeal.

the ruling as resting on the premise that a paper bag is "not a worthy container."[2]

Appellant submitted the case on the police report. The court found the petition true and committed appellant to the custody of the probation officer for placement in a county facility. This timely appeal followed.

ANALYSIS

## A. *Introduction*

■ A defendant[3] who moves to suppress evidence has the initial burden of producing evidence to make out a prima facie case of an illegal search or seizure. (4 Witkin & Epstein, Cal. Criminal Law, *op. cit. supra*, Exclusion of Illegally Obtained Evidence, § 2253, p. 2648.) ■ Here, appellant does not challenge the seizure of the paper bag, only its supposed "search" without a warrant. But the record does not establish that a search occurred. There is no evidence that officers *opened* the paper bag in which the

---

[2]The court's full remarks may be understood to refer only to a paper bag *in these circumstances*, i.e., used to stash contraband, out of doors and out of the defendant's apparent control:

"THE COURT: . . . There's lots and lots of cases where minors stash—minors, adults, whatever—stash their drugs somewhere. Usually the drugs are in some kind of container . . . .

"Well, Ziplock, a brown paper bag crumpled up. They're usually not—if this were a locked, like you say, a briefcase or something, I might agree with you but paper bag—I just don't think that the exclusionary rule goes far enough to protect it . . . .

"I've had 30, 40 cases where it's in a brown [bag] . . . .

"Or it's stashed under a tree, in a fence, on a bush, it's wrapped up in a brown paper bag. Sometimes it's not a full bag. It's just a piece of brown paper but it's closed.

"To require a search warrant in this situation in the exigency of the circumstances, the observations that the police officer has seen, a high narcotic area, is, at first, very impractical and, second, just illogical, I think.

"Ms. SARGENT: There's nothing to prevent them from seizing the bag and you may—if it's illogical it's because the Court finds the closed-container rules illogical.

"THE COURT: No. I don't think this is—I don't think this applies. Maybe the Court of Appeal will have to decide.

"Ms. SARGENT: So the Court doesn't believe that this qualifies,—it's not a worthy container?

"THE COURT: Yes. I guess that's one way of putting it. It's just a paper bag sitting there and the guy's reached in it three times and taken things out and brought things from there. I just don't think that it's applicable—that the cases you've cited are applicable."

[3]For present purposes there is no meaningful distinction between a criminal defendant and a juvenile charged under Welfare and Institutions Code section 602 with conduct which would be criminal if committed by an adult. (See 4 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Exclusion of Illegally Obtained Evidence, § 2243, p. 2634, and cases cited.)

marijuana was found.[4] For all we know, the bag was already open. If so, no "search" of its contents occurred; the officers merely seized contraband in plain view.

We hesitate to rest our decision on this basis, however. The parties and the court below seem to have *assumed* that the bag was "searched," i.e., opened by officers. It may be less than fair to tax appellant with the consequences of a failure of proof now, when it is now too late to adduce the evidence which might cure the deficiency. Accordingly, we proceed on the assumption that the paper bag was closed when seized, and that the discovery of the contraband could not occur without the officers' opening the bag. The question then is whether their doing so without a warrant offended the Fourth Amendment.

The threshold question in any Fourth Amendment analysis is whether the person challenging the allegedly unlawful search had a constitutionally protected reasonable expectation of privacy with respect to the area or item searched. (*California* v. *Ciraolo* (1986) 476 U.S. 207, 211 [90 L.Ed.2d 210, 215, 106 S.Ct. 1809].) This involves a two-part inquiry: "first, has the individual manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable?" (*Ibid.*; see *California* v. *Greenwood* (1988) 486 U.S. 35, 39-40 [100 L.Ed.2d 30, 36, 108 S.Ct. 1625]; *Smith* v. *Maryland* (1979) 442 U.S. 735, 740 [61 L.Ed.2d 220, 226-227, 99 S.Ct. 2577]; *People* v. *Cook* (1985) 41 Cal.3d 373, 376-377, 379 [221 Cal.Rptr. 499, 710 P.2d 299]; *People* v. *Galan* (1985) 163 Cal.App.3d 786, 792 [209 Cal.Rptr. 837]; *People* v. *Smith* (1986) 180 Cal.App.3d 72, 81 [225 Cal.Rptr. 348].)

The reasonableness of a claimed expectation of privacy depends on the totality of circumstances presented in each case. (*Betchart* v. *Department of Fish & Game* (1984) 158 Cal.App.3d 1104 [205 Cal.Rptr. 135]; *People* v. *Smith, supra,* 180 Cal.App.3d 72, 81.) The burden is on the defendant to prove that he or she had a protectible expectation of privacy in the area or item searched. (*People* v. *Dees* (1990) 221 Cal.App.3d 588, 593 [270 Cal.Rptr. 554], citing *Rawlings* v. *Kentucky* (1979) 448 U.S. 98, 104 [65 L.Ed.2d 633, 641, 100 S.Ct. 2556]; *People* v. *Root* (1985) 172 Cal.App.3d 774, 779 [218 Cal.Rptr. 182].) Insofar as the trial court's determination of this issue rests on uncontroverted facts, an appellate court exercises independent judgment in reviewing that determination. (See *People* v. *Brown* (1990) 216 Cal.App.3d 1442, 1448 [265 Cal.Rptr. 552], review den.)

---

[4]Officer Orozco described appellant's handling of the bag but did not suggest that appellant had closed it prior to its seizure by police. Neither Officer Smith nor Officer Rae suggested that the bag was closed or that either of them "opened" it. The closest thing to evidence on this point was Officer Rae's description of the bag as "crumpled."

B. *No Categorical Exclusion*

The trial court here may be understood to have concluded that paper bags are categorically exempt from Fourth Amendment protection. (See, *ante*, fn. 2.) Appellant correctly points out that such a view is untenable. The Supreme Court has declared that "a constitutional distinction between 'worthy' and 'unworthy' containers would be improper . . . . [T]he central purpose of the Fourth Amendment forecloses such a distinction. For just as the most frail cottage in the kingdom is absolutely entitled to the same guarantees of privacy as the most majestic mansion, so also may a traveler who carries a toothbrush and a few articles of clothing in a paper bag or knotted scarf claim an equal right to conceal his possessions from official inspection as the sophisticated executive with the locked attaché case . . . . [¶] [T]he Fourth Amendment provides protection to the owner of every container that conceals its contents from plain view." (*United States v. Ross* (1982) 456 U.S. 798, 822-823 [72 L.Ed.2d 572, 592, 102 S.Ct. 2157], fns., citation omitted.)

A paper bag, then, is a "container" every bit as entitled to Fourth Amendment protection as any other "container." (*United States v. Salazar* (9th Cir. 1986) 805 F.2d 1394, 1398; see *Smith v. Ohio* (1990) 494 U.S. 541 [108 L.Ed.2d 464, 110 S.Ct. 1288] [illegal search of paper bag first being carried by defendant when accosted by officers]; *People v. Haines* (1981) 123 Cal.App.3d 861 [177 Cal.Rptr. 41] [bag placed in carport storage cabinet by defendant was properly seized by officers, but impermissibly searched without warrant].) To the extent the contrary is suggested by *People v. Fick* (1980) 107 Cal.App.3d 892, 896 [166 Cal.Rptr. 106], that case is irreconcilable with the Supreme Court cases just cited. (See *People v. Carter* (1985) 163 Cal.App.3d 1183, 1187-1188 [210 Cal.Rptr. 103].)

It follows that the trial court here applied an erroneous legal principle insofar as it took such a categorical approach. That error does not, however, automatically require reversal. Generally, the trial court's reliance on erroneous reasoning is no basis for reversal if the decision is correct. (6 Witkin & Epstein, *op. cit. supra*, Appeal, § 3204, p. 3962.) We review the correctness of the challenged ruling, not of the analysis used to reach it. Here, we believe the ruling was correct because the circumstances shown by the undisputed facts could not give rise to an objectively reasonable expectation of privacy.

C. *No Reasonable Expectation of Privacy*

At the time of the search, the paper bag was not within appellant's immediate reach; indeed, appellant had taken pains to put it *out* of his

apparent possession and control, for the manifest purpose of maintaining "deniability" as to the bag and its contents in the event of the arrival of law enforcement officers. To all appearances the bag was mere litter. A casual passerby would assume that a crumpled paper bag lying unattended on or near a public street or sidewalk has been discarded by, and is of no further interest or concern to its erstwhile owner. A *normative* expectation by the owner that the contents would remain private would be unreasonable.[5]

The trial court opined that a different result might follow if the container in question were a locked suitcase. We need not decide that question. The assumptions and expectations attending a suitcase sitting 10 feet from the nearest person are not the same as those which attend a crumpled paper bag lying on the ground in the same location. Suitcases are not typically strewn about the landscape. Paper bags are often casually discarded. Both *types* of containers are equally protected by the Fourth Amendment when used as receptacles for private materials. Neither is protected when no reasonable expectation of privacy is manifested. The nature of the container is one factor which determines whether such an expectation has been manifested. (*People* v. *Root, supra,* 172 Cal.App.3d 774, 779.) The absence of a categorical exclusion for certain types of containers does not blind courts to normative realities.

It might be supposed that had a passerby actually attempted to pick up the bag, or even hovered too near it, appellant would have asserted his latent interest. But there is no evidence to that effect, and even if there were, appellant's secret intentions would not dispel the effect of the objective circumstances deliberately created to suggest that he had no interest in the bag. When appellant placed a crumpled paper sack on the ground near a public sidewalk, well out of his reach, he gave up any reasonable expectation that it should be recognized as "his" or that he should be recognized as entitled to have it or its contents left alone. If he in fact entertained such an expectation, it was not an objectively reasonable one, and would not become such merely because of a posited secret intention to assert an interest if and when the sack was approached.

It might be objected that the *police* must have inferred that appellant sought to protect the bag's contents from disclosure, given their surreptitious

---

[5]By "normative" we do not mean to embroil ourselves in sociological constructs but only to distinguish between that which one "expects" in the sense of "believes likely to occur," and that which one "expects" because it is generally agreed that one is entitled to it. One who buries incriminating evidence in a public park may reasonably *believe* that it will escape discovery, but has no socially recognized entitlement to avoid detection. In other words, the "reasonable expectation" in question is not the belief that attempts at concealment will succeed, but rather a belief rooted in social norms that the place or item searched is objectively recognizable as "private," and thus protected from official scrutiny.

observation of his conduct. But if the test is not what the defendant secretly intends, neither is it what the police infer. In *United States* v. *Thomas* (D.C. Cir. 1989) 275 App.D.C. 21 [864 F.2d 843], officers saw a group of men disperse upon their approach. One of them, the defendant, carried a brown gym bag into a nearby apartment building. An officer watched through a small window as the defendant set the bag down in a hallway and walked away. The court held that officers properly seized and searched the bag despite the fact that the defendant might have intended to retrieve it later. (*Id.*, 864 F.2d at p. 846, fn. 3.)

Again, the test is whether society is willing to recognize an asserted privacy expectation as "reasonable." (*California* v. *Ciraolo, supra,* 476 U.S. 207, 211 [90 L.Ed.2d 210, 215].) This is one way of viewing the disclaimer cases, where the defendant denies any interest in the item searched. Such a denial makes it unreasonable to expect that any subjective desire to protect the contents of the item will be honored. This is so even though the police do not credit the denial but believe or know that the item is in fact the defendant's. (See *People* v. *Mendoza* (1986) 176 Cal.App.3d 1127, 1133 [224 Cal.Rptr. 145], review den. [shoulder bag; arrestees denied any knowledge or interest]; *People* v. *Dasilva* (1989) 207 Cal.App.3d 43, 49 [254 Cal.Rptr. 563], review den. [items in car trunk]; *People* v. *Vasquez* (1983) 138 Cal.App.3d 995, 1001 [188 Cal.Rptr. 417] [robbery suspects claimed they found pillowcases in bushes]; *United States* v. *Nordling* (9th Cir. 1986) 804 F.2d 1466, 1469-1470 [luggage deliberately left on airplane when police sought to question defendant].) Here appellant impliedly disclaimed any privacy interest by his conduct. In the absence of some countervailing assertion of interest, he could not maintain an objectively reasonable expectation of privacy.

 The case also bears a conceptual resemblance to the fairly common situation in which the defendant discards incriminating evidence upon the approach of officers. Unless such action is caused by improper police conduct, it operates as a relinquishment of any reasonable expectation of privacy with respect to the item discarded. (*People* v. *Brown, supra,* 216 Cal.App.3d 1442, 1451; see *People* v. *Arangure* (1991) 230 Cal.App.3d 1302 [282 Cal.Rptr. 51] [paper bag stuffed in trash can on officer's approach]; *In re Kemonte H.* (1990) 223 Cal.App.3d 1507 [273 Cal.Rptr. 317]; *People* v. *Nickleberry* (1990) 221 Cal.App.3d 63 [270 Cal.Rptr. 269], review den.; *People* v. *Patrick* (1982) 135 Cal.App.3d 290 [185 Cal.Rptr. 325].)

 At the time of the officers' approach here, the bag was already out of appellant's apparent possession and control. By placing the bag at a distance from himself, he engaged in a sort of anticipatory drop. Since there

is no evidence that he attempted to reassert possession or control after the officers approached, there is no objective basis on which to predicate a reasonable expectation that the bag would not be searched. Furthermore, so far as the record shows, appellant continued to pretend that the bag had nothing to do with him. That being so, officers had no obligation to treat it as being clothed with an expectation of privacy.

It thus appears that the "abandonment" theory offered by the prosecution was substantially correct. In contending otherwise, appellant cites *Smith* v. *Ohio*, *supra*, 494 U.S. 541 [108 L.Ed.2d 464], and *People* v. *Haines*, *supra*, 123 Cal.App.3d 861. On the issue at hand, however, those cases bear no conceptual resemblance to this one. In *Smith* the supposed abandonment consisted of the defendant's throwing a paper bag on the hood of his car when police approached. The state court rejected this claim and the Supreme Court saw no reason to do otherwise. In *Haines* the defendant placed a paper bag in a storage bin in his own carport. The court quite reasonably concluded that this did not constitute abandonment. (*Id.*, at p. 867.) Neither case is analogous to the facts here.

Appellant also contends that predicating affirmance on abandonment would contradict the trial court's "finding" that no abandonment occurred. In fact the court made no such finding. Instead, it considered the abandonment theory logically irreconcilable with the underlying charge of possession. In this the court was mistaken. "Abandonment here [i.e., for Fourth Amendment purposes] is not meant in the strict property-right sense, but rests instead on whether the person so relinquished his interest in the property that he no longer retained a reasonable expectation of privacy in it at the time of the search. [Citations.]" (*United States* v. *Jackson* (9th Cir. 1976) 544 F.2d 407, 409, quoted in *People* v. *Brown*, *supra*, 216 Cal.App.3d at p. 1451.) " 'In essence, what is abandoned is not necessarily the defendant's property, but his reasonable expectation of privacy therein.' " (*People* v. *Haines*, *supra*, 123 Cal.App.3d 861, 867, quoting *City of St. Paul* v. *Vaughn* (1975) 306 Minn. 337 [237 N.W.2d 365, 370-371].) If the defendant has so treated the object as to relinquish a reasonable expectation of privacy, it does not matter whether formal property rights have also been relinquished. (*United States* v. *Diggs* (9th Cir. 1981) 649 F.2d 731, 735, cert. den. 454 U.S. 970 [70 L.Ed.2d 387, 102 S.Ct. 516]; see *United States* v. *Thomas*, *supra*, 864 F.2d 843, 845-847 [putative intent to retrieve gym bag at later time did not preclude abandonment for Fourth Amendment purposes]; *People* v. *Juan* (1985) 175 Cal.App.3d 1064 [221 Cal.Rptr. 338], review den. [jacket left on chair in restaurant].) Appellant is therefore mistaken in contending that abandonment does not occur unless the actor intends to permanently relinquish control over the object. Neither of the cases cited for this proposition supports it.

(*California* v. *Hodari D.* (1991) 499 U.S. __ [113 L.Ed.2d 690, 111 S.Ct. 1547] [suspect had not been "seized" when he tossed contraband during police pursuit]; *Hester* v. *United States* (1924) 265 U.S. 57, 58 [68 L.Ed. 898, 899, 44 S.Ct. 445] [no "seizure" of moonshine containers thrown by suspect].)

Because appellant could possess the contraband for purposes of substantive criminal law while abandoning his privacy interest for purposes of the Fourth Amendment, there was no internal contradiction in the prosecution's theory.[6] The trial court's rejection of that theory rested not on a finding of fact but on a mistaken perception of the applicable law. As such it is not binding on us. The question was whether, at the time of the search and seizure, appellant had an objectively reasonable expectation of privacy with respect to the contents of this particular brown paper bag. The uncontroverted facts lead us to conclude that he did not.

The judgment is affirmed.

Benson, J. and Peterson, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 13, 1992.

---

[6] In *People* v. *Dees, supra,* 221 Cal.App.3d 588, 595-598, the defendant challenged the search of a car while introducing evidence that it was not his car. The prosecution contended that it was the defendant's car, but argued that defendant's contrary evidence deprived him of *standing* to challenge the search. The court held that such prosecutorial self-contradiction is impermissible. (*Id.,* at pp. 595-598; see *United States* v. *Isaacs* (9th Cir. 1983) 708 F.2d 1365, 1367-1368.) No such contradiction is presented here: the prosecution contended that the contraband was in appellant's possession, but that appellant had abandoned any protectible privacy interest at the time of the search.