Filed 3/17/16  P. v. Lopez CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>OMELIO VALDEZ LOPEZ,<br><br>  Defendant and Appellant. | B261848<br><br>(Los Angeles County<br>Super. Ct. No. NA100468) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard R. Romero, Judge.  Reversed.

Jamie Lee Moore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Michael R. Johnsen, Supervising Deputy Attorney General, and Paul S. Thies, Deputy Attorney General, for Plaintiff and Respondent.

_____

In January 2015, a jury convicted Omelio Valdez Lopez (Lopez) of two counts: (1) bringing contraband—methamphetamine—into jail (Pen. Code, § 4573, subd. (a)[1]) and possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a))[2] and the court sentenced him to a total of nine years in state prison and 114 days in county jail. On appeal, Lopez contends there was insufficient evidence that he knew of the presence and character of the methamphetamine when he entered the jail.[3] We agree and reverse the conviction for the section 4573 offense and remand for further proceedings consistent with our holding.

## BACKGROUND

On October 6, 2014, at approximately 6:30 a.m., during a sweep of Lincoln Park, Long Beach Police Officer Armand Castellanos found Lopez sleeping on a staircase. This was not the first time that Officer Castellanos had encountered Lopez. On each prior occasion, Officer Castellanos spoke with Lopez in English and was always under the impression that Lopez understood him.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] Initially, Lopez was charged only with bringing contraband into jail. The second count, possession of a controlled substance, was added during jury selection. Prior to Proposition 47, possession of controlled substances in violation of Health and Safety Code section 11377 was a wobbler offense—either a felony or a misdemeanor. (Health & Saf. Code, § 11377; *In re Manzy W.* (1997) 14 Cal.4th 1199, 1210.) However, as amended by Proposition 47, "a violation of that section is a misdemeanor, unless the defendant 'has one or more prior convictions' for an offense specified in Penal Code section 667, subdivision (e)(2)(C)(iv)—which lists serious and violent felonies that are sometimes referred to as "'super strike' offenses"—or for an offense that requires the defendant to register as a sex offender under section 290, subdivision (c).'" (*People v. Lynall* (2015) 233 Cal.App.4th 1102, 1108–1109.) For Lopez, the offense was treated as a misdemeanor.

[3] Lopez also argues that he was incorrectly sentenced with regard to the section 4573 offense because the trial court erroneously determined that a 1988 conviction in Minnesota constituted a strike. Because we reverse Lopez's conviction of the section 4573 offense, his argument has been rendered moot.

2

Shortly after Officer Castellanos detained Lopez, he was joined by Long Beach Police Officer Thomas Robles. After arresting Lopez for sleeping in the park, Officer Robles searched Lopez for weapons, contraband or any "illegal substance." At the time, Lopez was wearing pants, socks, shoes and a "pink long sleeved button up shirt." According to Officer Robles, Lopez's shirt "wasn't wrinkled," but "pressed"; it was a "[v]ery clean," "[v]ery nice shirt." At the time, Officer Robles assumed that Lopez had just put the shirt on. During his search, Officer Robles did not find any questionable items on Lopez.

While he transported Lopez to Long Beach men's jail, Officer Robles asked Lopez "[m]aybe three times" if he had any narcotics on him. Each time, Lopez said, "No." Officer Robles questioned Lopez in English and, as with Officer Castellanos, it appeared that Lopez understood the questions. When they arrived at the jail, Officer Robles once more asked Lopez if he had any narcotics and, once more, Lopez said that he did not. Officer Robles also advised Lopez that he would be charged with an additional crime if he had any drugs on him.

Once inside the station, Lopez was taken through the booking process. Lopez proceeded to answer all of the booking questions in English, including his age, where he was born, his address, phone number, and whether he had any narcotics on him. As part of the booking process, officers searched Lopez's person and personal property. As with the initial search performed by Officer Robles in Lincoln Park, no weapons or contraband or illegal substances were found.

After booking, Officer Robles then accompanied Lopez to a different location for a more thorough search by a Corrections Officer for the Long Beach men's jail. Officer Eddie Patterson searched Lopez. Before Officer Patterson searched Lopez, he first asked him if he had any weapons or drugs on his person. Officer Patterson questioned Lopez in English and it appeared to him that Lopez understood the questions. As he had with Officer Robles, Lopez denied having any weapons or drugs. During his search, Officer Patterson found in Lopez's shirt pocket a clear plastic baggie containing a crystal-like

substance, that filled up half of the baggie. The substance was subsequently tested and found to be 0.07 grams of methamphetamine.

Throughout the process of being arrested and booked, Lopez did not run or object to any of the searches, but cooperated with the police. Nor did he attempt to take-off his shirt or take anything out of his shirt pocket and discard it.

On January 7, 2015, the People's case against Lopez was tried to a jury. At the close of the People's case, Lopez moved to dismiss on two grounds: People had failed to establish that he knew of the presence of the methamphetamine in his shirt pocket; and (b) that the amount of methamphetamine was a useable (as opposed to trace) quantity. The motion was denied. On January 8, 2015, after less than an hour of deliberation, the jury reached a verdict, finding Lopez guilty on both counts.

On January 26, 2015, the trial court sentenced Lopez to a total of nine years in state prison and 114 days in county jail. For the section 4573 offense (bringing contraband into jail), Lopez was sentenced to nine years in state prison (the midterm of three years doubled under the "Three Strikes" law (§ 667 et seq.), plus a total of three years for the prison priors). For the possession of a controlled substance offense (Health & Saf. Code, § 11377, subd. (a)), Lopez was sentenced to 114 days in the Los Angeles County jail.[4]

## DISCUSSION

### I.     Standard of review

"To determine the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the prosecution to determine whether it contains [substantial] evidence that is reasonable, credible and of solid value, from which a rational trier of fact could find that the elements of the crime were established beyond a reasonable doubt." (*People v. Tripp* (2007) 151 Cal.App.4th 951, 955 (*Tripp*).) We "presume in support of the judgment the existence of every fact the trier could reasonably

---

[4] The trial court also awarded Lopez 228 days of presentence custody credit—114 days of actual custody and 114 days of conduct credit.

4

deduce from the evidence." (*People v. Redmond* (1969) 71 Cal.2d 745, 755 (*Redmond*).) "We need not be convinced of the defendant's guilt beyond a reasonable doubt; we merely ask whether '"any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."'" (*Tripp*, at p. 955, italics omitted.)

"This standard of review also applies to circumstantial evidence. [Citation.] If the circumstances, plus all the logical inferences the jury might have drawn from them, reasonably justify the jury's findings, our opinion that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." (*Tripp*, *supra*, 151 Cal.App.4th at p. 955.)

However, "[e]vidence which merely raises a strong suspicion of the defendant's guilt is not sufficient to support a conviction. Suspicion is not evidence; it merely raises a possibility, and this is not a sufficient basis for an inference of fact." (*Redmond*, *supra*, 71 Cal.2d at p. 755.) "Circumstantial evidence is like a chain which link by link binds the defendant to a tenable finding of guilt. The strength of the links is for the trier of fact, but if there has been a conviction notwithstanding a missing link it is the duty of the reviewing court to reverse the conviction." (*People v. Redrick* (1961) 55 Cal.2d 282, 290.)

## II.     There is insufficient evidence to support a finding that Lopez knew about the presence and nature of the methamphetamine

Section 4573, subdivision (a) "makes it a felony for 'any person' to 'knowingly bring[ ] . . . into any county . . . jail . . . any controlled substance" that he is not authorized to possess." In other words, section 4573 applies to someone who has a controlled substance in his possession when arrested for another crime, and who knowingly and voluntarily brings the drugs into jail when booked pursuant to that arrest. (*People v. Low* (2010) 49 Cal.4th 372, 381–389.) Here, it is undisputed that Lopez had actual (as opposed to constructive) possession of the methamphetamine—it was found in the pocket of the shirt that he was wearing when he was arrested. The only disputed issue is whether Lopez had "knowledge of the presence . . . of the drug" in his shirt and knowledge of the

5

"narcotic character of the drug." (*People v. Williams* (1971) 5 Cal.3d 211, 215 (*Williams*).)

Knowledge of the presence and nature of the controlled substance may be established by circumstantial evidence and any reasonable inferences drawn from that evidence. (*Williams*, *supra*, 5 Cal.3d at p. 215.) While actual possession may constitute strong circumstantial evidence of knowledge (*People v. Carrasco* (1981) 118 Cal.App.3d 936, 947), by itself, it is insufficient. "In determining the sufficiency of the evidence to support a conviction for possession of a restricted dangerous drug, precedents relating to possession of narcotics are relevant." (*Williams*, at pp. 214–215.) Those precedents establish that "*possession alone* does *not* satisfy the requirement of knowledge developed by the cases." (*Id.* at p. 216, italics added.)

In other words, in order to establish the knowledge element, something other than possession is required; there must be some "acts or declarations of the accused" to show knowledge. (*Williams*, *supra*, 5 Cal.3d at p. 216.) For example, knowledge "may be shown by evidence of the defendant's furtive acts and suspicious conduct indicating a consciousness of guilt, such as an attempt to flee or an attempt to hide or dispose of the contraband [citations], or by evidence showing a familiarity with the substance, such as needle marks or other physical manifestations of drug use or instances of prior drug use." (*Tripp*, *supra*, 151 Cal.App.4th at p. 956.)

Here, there is no evidence in the record that Lopez either acted in a manner indicating a consciousness of guilt or that he had any familiarity with methamphetamine. First, Lopez did not attempt to flee from the police or give any false statements to the police or corrections officers. In contrast, in *People v. Lucas* (1960) 180 Cal.App.2d 723, 725, the court held that there was substantial evidence of knowledge because the defendant not only had heroin in a cigarette pack in his shirt pocket, but he fled upon seeing officers and lied about his employment and residence. In *People v. Low*, *supra*, 49 Cal.4th 372, the police found drugs tucked inside the defendant's sock during booking; in addition, there was evidence that Low was uncooperative with the police and there was testimony by his girlfriend that a friend had given the defendant a bag of

6

methamphetamine with the keys to the stolen car that the defendant was driving when he was arrested. (*Id*. at pp. 375, 377–378.)

Second, Lopez, made no effort to hide or dispose of the methamphetamine. In contrast, in *People v. Physioc* (1948) 86 Cal.App.2d 650, 651, substantial evidence of knowledge was found because the defendant hid small white pill-shaped tablets of morphine in a match box and then tossed the match box from his pocket upon the officer's arrival. Similarly, in *People v. Rushing* (1989) 209 Cal.App.3d 618, 622, footnote 2, the court held that the jury could reasonably infer defendant knew of the controlled nature of cocaine in his possession by the fact it was hidden in a WD-40 can with a false bottom and because he kept a "narcotics ledger" in his room.

Third, there was no showing that Lopez was familiar with methamphetamine, had in his possession any paraphernalia associated with this type of controlled substance, or manifested any signs of actual drug use. In *People v. Garringer* (1975) 48 Cal.App.3d 827, 830–831 there was substantial evidence to support the convictions because there was evidence that the defendant knew that red Phenobarbital capsules were "'some kind of drugs,'" had dilated, red and watery eyes, slurred and incoherent speech and unsteady balance. In *People v. Hernandez* (1962) 206 Cal.App.2d 253, 254, the conviction for possession of heroin was supported, in part, by evidence that the defendant's eyes were "pinpointed," there was a fresh needle mark in his arm, and heroin paraphernalia was found in a cellophane package partially hidden in defendant's buttocks.

Fourth, Lopez never admitted that either the shirt or the drugs were his. In contrast in *People v. Martin* (1969) 2 Cal.App.3d 121, the defendant admitted that a suit found in his home was his and that he knew that drugs were in his home; in addition, there was testimony by a police informant that drugs were being sold out of the defendant's home. (*Id*. at pp. 124–125.) Similarly, in *People v. Garringer*, *supra*, 48 Cal.App.3d at page 830, when the defendant was being searched by police the defendant effectively admitted that the drugs were his: "As [Officer] Marco began the search defendant moved his right hand from the hood to the area of his waist. The deputy grabbed defendant's hand. Defendant said, 'Don't fuck with my stash.' [Officer] Marco

7

pulled defendant's hand away from his waist and observed that he was clutching a brown paper bag. [Officer] Marco took the bag away from defendant, looked inside and found several plastic bags containing small red capsules and 13 foil wrapped packages containing red capsules, all resembling secobarbital or 'reds.' There was a total of 1600 capsules."

In short, the People failed to meet their evidentiary burden with respect to the knowledge element of the section 4573 offense. Instead of presenting supporting evidence (direct or circumstantial) showing that Lopez had knowledge of the presence and nature of the methamphetamine, the People relied solely on the fact that the methamphetamine was found in the pocket of the shirt Lopez was wearing at the time of his arrest—that is, the People relied on possession alone. As our Supreme Court has held, suspicion "merely raises a possibility, and this is not a sufficient basis for an inference of fact." (*Redmond*, *supra*, 71 Cal.2d at p. 755.) Accordingly, Lopez's conviction on the section 4573 offense is reversed.

## DISPOSITION

The judgment is reversed.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


ROTHSCHILD, P. J.


LUI, J.