Filed 1/16/24  P. v. Villalobos CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DEMESIO CERVANTES VILLALOBOS,<br><br>Defendant and Appellant. | F084005<br><br>(Super. Ct. No. CF82277056)<br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Fresno County.  Arlan L. Harrell, Judge.

Allen G. Weinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Erin Doering and Eric L. Christoffersen, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Appellant Demesio Cervantes Villalobos appeals following the denial of his petition for resentencing under Penal Code[1] former section 1170.95 (now § 1172.6).[2] Appellant contends the evidence submitted in this case cannot support the trial court's finding, after an evidentiary hearing, that appellant is ineligible for relief. For the reasons set forth below, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1982, appellant was convicted of murder, assault with a deadly weapon on a police officer, and resisting an executive officer. His conviction, however, was overturned on appeal. Following that appeal, appellant pleaded guilty to a single count of second degree murder.

In 2019, appellant filed a petition for resentencing. The People opposed the petition, and the trial court initially found appellant failed to make a prima facie showing of eligibility for relief. On appeal, this court remanded for an evidentiary hearing on appellant's petition in light of concessions that the bare record of conviction did not preclude appellant's request for resentencing. (*People v. Villalobos* (June 25, 2021, F080829) [nonpub. opn.].)

Upon remand, the parties submitted additional evidence related to appellant's conviction. In addition, the trial court took briefing on appellant's eligibility in light of that evidence. For the purposes of this appeal, we first outline the facts of appellant's conviction as set forth in the admissible evidence submitted to the court before reviewing the trial court's ruling and order.

---

[1]     Undesignated statutory references are to the Penal Code.

[2]     Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10).

2.

*Events Leading to Appellant's Conviction*

Appellant's conviction arose out of a shooting that killed one Officer Avila. The events leading to the shooting and Officer Avila's death were shown to comprise a loosely related series of events beginning in March 1980 and ending in November 1981.

In March 1980, appellant was sentenced to a jail term on a burglary charge. He was sent to the Tulare County Jail Annex but somehow escaped.

Appellant was later found by police in June 1980, when he was arrested for another burglary. In this incident, Officer Avila arrived to assist with the arrest. Although appellant was arrested after attempting to flee, he again found a way to escape after being left in a patrol car while another suspect was booked.

Finally, in November 1981, appellant was again found by the police. This time, appellant had decided to go to a bar in Parlier with his uncle, Solomon Villalobos, and two others.[3] On the way to the bar, the group stopped at a market where Solomon obtained a nine-millimeter handgun. Solomon gave the handgun to appellant, who kept the loaded weapon in his waist band. Appellant was aware that Solomon himself was armed with a .25-millimeter automatic pistol at the time.

Once at the bar, appellant was seen with the nine-millimeter pistol, and the police were called. Officers Avila and Acuna responded to the call. Both were in uniform. When they arrived, the establishment had 25 to 30 people in it, with several people seated at the bar and others at surrounding tables. The bartender indicated that someone, sitting at the bar, was the person possessing a gun. The officers first patted down a different patron before approaching appellant.

When the officers approached appellant and began to pat him down, appellant pulled his gun and pointed it at the officers. Appellant had his finger on the trigger, but

---

[3] For purposes of clarity, we refer to Solomon Villalobos by his first name throughout this opinion.

later claimed he had no intent to shoot and asserted he had only been handed the gun right before being patted down. A struggle ensued, and the two officers and appellant ended up on the ground struggling for the gun until Officer Acuna was able to free the gun from appellant's control.

As the struggle ended and appellant was being subdued, Solomon stood up from his seat in a nearby booth and began shooting. Officer Acuna returned fire. Both Solomon and Officer Avila died from the exchange. Appellant fled the scene but was eventually apprehended, leading to his trial and eventual plea deal.

*The Trial Court's Oral Analysis and Written Order*

Returning to the present proceedings, following remand on appellant's petition for resentencing, the trial court held an evidentiary hearing on appellant's eligibility for resentencing. No new testimony was provided, and the court proceeded based on the records submitted to it. The court reviewed the records and provided an oral statement regarding its thinking.

The court began by laying out the evidentiary and legal principles that would guide its decision. The court briefly reviewed the procedural history of the case, including the fact that appellant's initial conviction had been under an aiding and abetting theory, before noting that the parties had submitted additional information in the form of jury instructions related to the substantial factor causation doctrine, the provocative act doctrine, and on the impact of appellant leaving the scene after the shooting. The court noted that appellant had challenged the applicability of the provocative act doctrine to the facts of the case.

The court then explained its conclusion "that the prosecution has met their burden of proof to show that [appellant] is ineligible for resentencing." In doing so, the court concluded that appellant "is found guilty of second degree murder on the theory of provocative act." The court then reviewed the evidence in the context of this view. In doing so, the court made several factual conclusions.

4.

First, the court concluded that conviction under such a theory required "proof that [appellant] personally harbored the mental state of malice." It also noted that the theory required "a provocative act" and that appellant "knew the natural and probable consequences of the provocative act were dangerous to human life and then acted with conscious disregard for life." The court concluded that appellant's act of "pointing a loaded [nine-]millimeter firearm at law enforcement officers and at the time having his finger on the trigger" was the provocative act, and an act appellant knew would be dangerous to human life. The court further found a "reasonable person in [appellant]'s position would have foreseen the high probability that pointing a loaded firearm at armed law enforcement officers in a bar, wherein at least two patrons were armed, could create a chain of events resulting in someone's death." This act was thus "a direct and substantial factor in causing Officer Avila's death."

The court recognized that Solomon had fired the shot that killed Officer Avila. However, the court noted, "Solomon certainly had no reason to fire on the officers other than to assist [appellant]'s conduct and further that gun wielding conduct initiated by [appellant]." The court considered whether Solomon's acts were independent but rejected that conclusion and stated, "It is this Court's belief that [appellant]—or Solomon was acting with [appellant]. He and [appellant] arrived together at the bar in Parlier, each armed, each aware that [appellant] was wanted by Parlier P.D. [Appellant] recognized Officer Avila and whirled around in his barstool, armed with a handgun, finger on the trigger as Officer Avila approached. [Appellant] had the firearm pointed at Officer Avila's stomach when officers saw it and attempted to retrieve the gun. Solomon had to see this action from the table nearby.… Because as soon as [appellant] was on the ground struggling to regain control of the gun, Solomon fired on the officers, killing Officer Avila, wounding Officer Acuna, and allowing [appellant] to flee."

The court concluded by explaining that on "the basis of the evidence presented for the Court, this Court finds that [appellant] would be and is guilty beyond a reasonable

doubt of second degree murder under existing law" and, therefore, that appellant was ineligible for resentencing.

In a later minute order, the trial court denied appellant's petition, writing that it had "reviewed documents as stated on the record" and finding that the "People have met their burden of proof that [appellant] is ineligible for resentencing under [section 1172.6]. For that reason, [appellant]'s petition for resentencing is denied."

This appeal timely followed.

## DISCUSSION

Appellant challenges the trial court's determination that he was ineligible for relief. In his opening brief, appellant focuses exclusively on the trial court's oral discussion. According to appellant, the trial court's statements show that it only found appellant ineligible under the provocative acts doctrine. Appellant then argues not only that the doctrine is inapplicable to appellant's situation, but also that the facts do not support such a finding. In response, the People point out that the court was presented with more than a single theory supporting its ultimate conclusion and argue that appellant's conviction can be properly sustained under a simple proximate cause and implied malice theory before also defending on the provocative act doctrine. Only in reply does appellant then argue the facts cannot support any theory of conviction before suggesting a remand would be required if this court found an implied malice theory was properly considered.

### *The Scope of Our Review*

We begin with whether this court is limited to reviewing the oral pronouncement of the trial court when reviewing its order denying appellant's resentencing petition. We note that such a limited review is not proper. "The very settled rule of appellate review is a trial court's order/judgment is presumed to be correct, error is never presumed, and the appealing party must affirmatively demonstrate error on the face of the record." (*People v. Davis* (1996) 50 Cal.App.4th 168, 172.) Even "the trial court's reliance on erroneous

6.

reasoning is no basis for reversal if the decision is correct. [Citation.] We review the correctness of the challenged ruling, not of the analysis used to reach it." (*In re Baraka H.* (1992) 6 Cal.App.4th 1039, 1045.)

In this case, the trial court's oral discussion was, as appellant notes, focused on a specific dispute between the parties—whether it should consider liability under the provocative acts doctrine. However, this dispute was not the only issue presented to the trial court in the record. The briefing submitted to the trial court focused exclusively on a theory for second degree murder that held appellant was a principle in the murder who personally acted with malice based on his conduct in pulling a gun on a police officer in a scenario where he knew his uncle was armed and seated nearby. On appeal, the People raise this same argument, contending appellant's conduct was the proximate cause of Officer Avila's death under *People v. Sanchez* (2001) 26 Cal.4th 834, 845 and *People v. Cervantes* (2001) 26 Cal.4th 860, 872, footnote 15. We therefore conclude that the issue of direct liability had been raised with the trial court and is properly preserved as a basis to review the correctness of the trial court's actual order—that the People met their burden to prove appellant was ineligible for resentencing. Accordingly, we next turn to reviewing that determination.

*Standard of Review and Applicable Law*

As noted, appellant's case arises out of a request for resentencing. The statute governing this process is section 1172.6. Under this statutory scheme, a "person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime … may file a petition with the court that sentenced the petitioner to have the petitioner's … conviction vacated and to be resentenced … when all of the following conditions apply:

"(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the

natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime .…

"(2) The petitioner … accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder .…

"(3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a).)

If the petitioner makes a prima facie showing of eligibility, as occurred here, the trial court is required to issue an order to show cause and to hold a hearing to determine whether to vacate the conviction and resentence the petitioner.  (§ 1172.6, subds. (c), (d)(1).)  "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019."  (§ 1172.6, subd. (d)(3).)

Upon an appeal following an evidentiary hearing denying relief, "[w]e review the trial judge's factfinding for substantial evidence.  [Citation.]  We ' "examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the defendant guilty] beyond a reasonable doubt." '  [Citation.]  Our job on review is different from the trial judge's job in deciding the petition.  While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt."  (*People v. Clements* (2022) 75 Cal.App.5th 276, 298, third bracketed insertion in original.)  "The conviction shall stand 'unless it appears "that upon no

hypothesis whatever is there sufficient substantial evidence to support [the conviction].” ’ ” (*People v. Cravens* (2012) 53 Cal.4th 500, 508 (*Cravens*).)

*Substantial Evidence Supports the Trial Court's Order*

In this case, the People argue appellant remains guilty beyond a reasonable doubt of second degree murder under an implied malice theory. We agree that substantial evidence supports the trial court's order under this theory.

“[S]econd degree murder … is ‘the unlawful killing of a human being with malice aforethought but without the additional elements, such as willfulness, premeditation, and deliberation, that would support a conviction of first degree murder.’ [Citation.] Malice may be either express (as when a defendant manifests a deliberate intention to take away the life of a fellow creature) or implied. [Citation.] ‘Malice is implied when the killing is proximately caused by “ ‘an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life.’ ” ’ ” (*Cravens*, *supra*, 53 Cal.4th at p. 507; see *People v. Landry* (2016) 2 Cal.5th 52, 96 [“A finding of express malice requires evidence of an intent to kill, whereas a finding of implied malice requires only an ‘intent to do an act dangerous to human life with conscious disregard of its danger.’ ”].)

“ ‘[S]econd degree murder based on implied malice has been committed when a person does “ ‘ “an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life” ’ .…” ’ [Citations.] ‘The concept of implied malice has both a physical and a mental component. [Citation.] The physical component is satisfied by the performance of “ ‘an act, the natural consequences of which are dangerous to life.’ ” [Citation.] The mental component … involves an act “ ‘deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life.’ ” ’ [Citation.] ‘In short, implied

9.

malice requires a defendant's awareness of engaging in conduct that endangers the life of another—no more, and no less.' " (*People v. Saucedo* (2023) 90 Cal.App.5th 505, 512, second & fifth bracketed insertions added.) " 'It is unnecessary that implied malice be proven by an admission or other direct evidence of the defendant's mental state; like all other elements of a crime, implied malice may be proven by circumstantial evidence.' " (*Ibid.*)

The amendments to the murder statutes identified in section 1172.6 maintained the viability of murder convictions based on implied malice and did not alter the definition of implied malice murder. (*People v. Reyes* (2023) 14 Cal.5th 981, 988–991 (*Reyes*) [implied malice remains a valid theory of second degree murder even after the changes to the law that § 1172.6 implements]; *People v. Clements*, *supra*, 75 Cal.App.5th at p. 298 [Sen. Bill No. 1437 (2017–2018 Reg. Sess.) amendments maintained viability of murder convictions based on implied malice].) Similarly, these amendments did not affect the proximate cause analysis outlined in *People v. Sanchez*, *supra*, 26 Cal.4th at page 845, such that "a death that is ' "a direct, natural and probable consequence of" ' the defendant's act … does not concern the imputed malice theory of criminal liability that is part of the natural and probable consequences doctrine of accomplice liability affected by … Senate Bill No. 1437." (*People v. Carney* (2023) 14 Cal.5th 1130, 1146.)

Upon review of the facts contained in the record of conviction, we find substantial evidence supports the conclusion that appellant is guilty beyond a reasonable doubt of proximately causing the second degree implied malice murder of Officer Avila. The act, the natural consequences of which are dangerous to life, in this case is appellant's decision to respond to the presence of Officers Avila and Acuna by pulling out a handgun and pointing it at the officers with a finger on the trigger. This act naturally and expectedly resulted in a struggle between officers, whose lives were put in immediate danger, and appellant, who was present at the bar with multiple companions—one of

whom was a family member who had not only armed himself but also provided appellant with the firearm he possessed and pointed at the officers.

As the trial court's oral pronouncement recognized, this act also met the mental requirement of conduct endangering the life of another and by one who acts with conscious disregard for life because appellant drawing his gun and attacking the police knowingly placed the lives of others in danger. Aside from the inherent danger of such conduct in a crowded bar, the evidence of coordinated arming and travel supports a finding that appellant knew Solomon would engage in supportive and violent behavior if appellant, who was actively on the run from the police, were confronted. The trial court reviewed the full evidence on this point and further found that Solomon's conduct was not an independent act but rather an action taken in concert with appellant who was actively attempting to avoid capture by the police. The evidence and reasonable inferences taken therefrom constitute substantial evidence supporting this finding and we see no basis to overturn the trial court's factual findings.

Appellant argues that his conduct cannot satisfy the proximate cause analysis required to convict one who did not fire a fatal shot under the recent *Reyes* opinion because appellant's acts were not the type "without which the death would not occur" (*Reyes*, *supra*, 14 Cal.5th at p. 989). We do not agree. In *Reyes*, our Supreme Court explained why proximate cause could not be found for an implied malice murder conviction based on the specific facts of that case. As the court wrote, "The evidence established that Reyes proceeded to an area on the edge of territory belonging to a rival gang and, alongside the other bikers, chased after Rosario's car. But acts that merely create a dangerous situation in which death is possible depending on how circumstances unfold do not, without more, satisfy this causation requirement. There was no evidence that Reyes's acts precipitated or provoked the shooting. And there is no reason to believe that the killing of Rosario would not have occurred if Reyes had not accompanied his fellow gang members on the ride or participated in the chase." (*Ibid*.) In a following

11.

discussion, the court further explained that merely travelling to rival gang territory was insufficient to demonstrate Reyes's acts involved a high probability that death would occur. (*Id*. at pp. 989–990.)

The facts of this case are far removed from *Reyes*. Unlike the scenario there, where only loose participation in the underlying event was being used to support conviction, here appellant's conduct is readily identifiable as the act that precipitated and provoked the shooting. Appellant made the choice to indicate that lethal violence was the appropriate response to the presence of officers in the bar through what is readily understood as a willful attempt to fire at the officers. That appellant was unable to fire before being disarmed by police, resulting in a struggle that further encouraged Solomon's killing of Avila, is not an indication that appellant's conduct was too attenuated to support a proximate cause finding or to demonstrate a high probability death would occur but rather supports a reasonable inference that if such an act had not been taken it is likely no death would have occurred. Indeed, Solomon not firing upon the police when they patted down a different patron than appellant fairly clearly indicates that Solomon would not have acted absent the conduct initiated by appellant. Appellant's attempt to fire upon the officers constituted the core act that led to the shooting and is thus readily differentiated from the acts of one merely participating in conduct that could result in violence leading to death. The trial court's rejection of appellant's petition was thus supported by substantial evidence on this ground.

Relatedly, although *Reyes* developed the law surrounding what acts are adequate to constitute the actus reus and proximate cause of an implied malice murder, we do not agree with appellant that remand is necessary for the trial court to further consider the guidance set forth in *Reyes*. *Reyes* itself did not break new ground, but rather provided additional discussion in areas already heavily discussed by cases such as *People v. Cervantes*, *supra*, 26 Cal.4th 860 and *Cravens*, *supra*, 53 Cal.4th 500 among others cited by the Supreme Court. In our review of the record, there is no indication of error under

12.

the standard set forth in *Reyes*.  This court has found that substantial evidence supports the trial court's order not only under the case law as developed at the time, but also as discussed in *Reyes*.  This is thus not a case like *Reyes* where the trial court applied the wrong legal standard and there remained a need for remand because it was unclear whether the court would reach the same conclusion under the proper standards.  (See *Reyes*, *supra*, 14 Cal.5th at p. 992.)

## DISPOSITION

The order denying appellant's petition to vacate his murder conviction and for resentencing is affirmed.


HILL, P. J.

WE CONCUR:


FRANSON, J.


PEÑA, J.


13.