Filed 9/23/25  P. v. Rangel CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B341603 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. XEAKA050596-02) |
| v. | |
| RAYMOND RANGEL, III, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jacqueline Lewis, Judge.  Affirmed.

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

————————————

Pursuant to *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*), we review an order denying appellant Raymond Rangel's motion for resentencing under Penal Code[1] section 1172.6. We grant Rangel's request that we take judicial notice of the records and files of his two prior appeals in case Nos. B158058 and B311083 (Evid. Code, §§ 4523, 459) and affirm the trial court.

## FACTUAL BACKGROUND

The evidence showed that Rangel and his co-defendant Daniel Louis Lopez, Jr., arrived uninvited at a bachelor party which featured two exotic dancers, each accompanied by her own bodyguard. Murder victim Sidney Hall was one of those bodyguards. Rangel and Lopez were kicked out of the party when one of the dancers complained that they were verbally harassing her. The men went to their car, sat in the car talking for about 15 minutes before reaching below their seats and exiting with handguns. As they were leaving, they told the third man in the car, Roy Brian Trevino, to get into the driver's seat and keep the lights off. Trevino heard Lopez yell toward the scene of the party, "I'm going to burn you." Openly armed, Lopez and Rangel returned to the scene of the party just as the dancers and their bodyguards decided to pack up and leave. As the dancers and bodyguards loaded up their car, they heard gunshots in rapid succession. One of the dancers testified she saw Lopez and Rangel with guns. That same dancer testified she saw Lopez, armed with a gun, take off after Hall, who was fleeing, while Rangel held the dancer Juanita Torres and her bodyguard

---

[1]     Undesignated statutory references are to the Penal Code.

2

Randy Santos at gunpoint. While Rangel was holding them and demanding their money, the dancer heard one more gunshot. Lopez then arrived and put his gun to the bodyguard's head. The dancer begged Lopez not to kill her or her bodyguard. After robbing the dancers, Rangel and Lopez left.

## PROCEDURAL BACKGROUND

An amended information filed February 19, 2002, charged Rangel and co-defendant Lopez with the murder of Hall during the commission or attempted commission of a robbery and while lying in wait in violation of sections 187, subdivision (a) and 190.2, subds. (a)(15) and (17). Rangel and Lopez were also charged with the robberies of Juanita Torres and Randy Santos in violation of section 211. It was also alleged that each defendant personally used and intentionally discharged a firearm which proximately caused great bodily injury and death in violation of sections 12022.5, subdivision (a)(1) and 12022.53, subdivisions (b) through (d). Rangel was also accused of personally using a firearm within the meaning of sections 12022.5, subdivisions (a)(1) and 12022.53, subdivision (b) during the commission of the two robbery offenses.

On March 5, 2005, a jury found Rangel guilty of first degree special circumstance robbery-murder and two counts of second degree robbery. The jury found not true the lying-in-wait special circumstance and the allegation that Rangel personally and intentionally discharged a firearm within the meaning of subdivision (c) of section 12022.53, and found true Rangel personally used a firearm within the meaning of sections 12022.5, subdivision (a)(1) and 12022.53, subdivision (b). He subsequently admitted prior conviction allegations.

The trial court sentenced Rangel to an aggregate determinate prison term of 35 years four months plus a consecutive term of life without possibility of parole on the murder. This court affirmed the judgment. (*People v. Daniel Louis Lopez Jr., et al.*, (May 30, 2003, B158058) [nonpub. opn.].)

On April 17, 2020, Rangel filed a petition for resentencing seeking to vacate his murder conviction. The trial court denied the petition and we affirmed the trial court order. Ultimately, on November 22, 2022, the California Supreme Court directed reconsideration of the petition in light of *People v. Strong* (2022) 13 Cal.5th 698. The matter was eventually returned to the trial court for further proceedings. The trial court set the matter for an evidentiary hearing at which the parties submitted no new evidence, relying on the reporter's and clerk's transcripts from the original trial.

On October 17, 2024, the trial court found "the D.A. has met its burden of proving to the court beyond a reasonable doubt that Mr. Rangel is guilty of the murder he was originally convicted of." The court found that "at the end of this 15-minute discussion, Mr. Lopez and Mr. Rangel exited the vehicle. They reached under their seats. They both grabbed out weapons. They came out of the vehicle, and they started immediately shooting at the victims in this matter. [¶] . . . [¶] [T]he court is convinced beyond a reasonable doubt that the planning took place during that 15-minute period of time after which both Mr. Rangel and Mr. Lopez came out shooting. And so I believe that he did have a plan—have a plan, a criminal enterprise that lead to the death of Mr. Hall. [¶] . . . [¶] The court does not believe that what was planned was an armed robbery, but does indicate that the intent here was the murder. [¶] . . . [¶] While the defense argues

4

that Mr. Rangel had no reason to know that this was happening, as I indicated, the shooting at the group of victims to begin with leads me to believe that he was certainly aware that this was happening.  He was present at the scene while he was not standing next to Mr. Lopez when the shooting occurred, by all accounts.  He watched Mr. Lopez run by pointing a gun shooting at Mr. Hall.  And so, certainly, he would have been in a position to prevent the murder, not only in the car, saying 'Hey, let's let it go.  Let's go,' but while on the street by saying 'Hey, let's get out of here.' [¶] [Rangel] did nothing to aid the victim in this matter. [¶] In fact after robbing Torres and Santos, after—after Mr. Lopez came back, they then both robbed Torres and Santos, and then [Rangel] ran back to the car. [¶] . . . [¶] [T]he court finds, again, beyond a reasonable doubt that Mr. Rangel was a major participant who acted with reckless indifference to human life, and the court is denying the [section] 1172.6 motion for relief at this time."  Rangel timely appealed.

We appointed counsel to represent Rangel on appeal.  On January 28, 2025, counsel filed a no-issue brief pursuant to *People v. Delgadillo*.  Counsel advised us they told Rangel he could file his own supplemental brief within 30 days and sent him transcripts of the record on appeal as well as a copy of the brief.

On January 28, 2025, this court sent Rangel notice that a brief raising no issues had been filed on his behalf.  We advised him he had 30 days within which to submit a supplemental brief or letter stating any issues he believes we should consider.  We also advised him that if he did not file a supplemental brief, the appeal may be dismissed as abandoned.

On June 18, 2025, Rangel filed a supplemental brief. He contends: 1) the trial court's finding that Lopez and Rangel exited their vehicle and both came out shooting at the victim directly contradicts the jury's acquittal of Rangel on the special allegation that he personally and intentionally discharged a firearm and the jury's acquittal on the special allegation that Rangel formed an intent to murder during that 15-minute period in the car with Lopez; 2) contrary to the jury's acquittal of the lying-in-wait allegation, the trial court found that the planning to murder Hall took place during the 15-minute period of time Rangel and Lopez were in the car after which both came out shooting; 3) the trial court's application of *People v. Banks* (2015) 61 Cal.4th 788 and *Banks's* "major participant" factors included its misapprehension that Rangel came out shooting or was shooting at the victims; 4) the trial court's application of *People v. Clark* (2016) 63 Cal.4th 522 and *Clark's* "reckless indifference to human life" and "effort to minimize the risk of violence during the felony" factors also relied on its misperception that Rangel fired his weapon at the victim and partygoers walking around scene of the shooting.

## DISCUSSION

### A.     Section 1172.6

Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) amended "the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) It accomplished this by amending sections 188 and

6

189.  (Stats. 2018, ch. 1015, §§ 2, 3; *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)  Section 188, subdivision(a)(3), now prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice to convict a principal of murder, except under the revised felony-murder rule in section 189, subdivision (d).  Section 189 requires the prosecution to prove that the defendant was the actual killer (§ 189 subd. (e)(1)), an aider and abettor to murder who acted with the intent to kill (*id.*, subd. (e)(2)); or a major participant in an underlying felony listed in section 189, subdivision (e)(3) who acted with reckless indifference to human life.  (*People v. Curiel* (2023) 15 Cal.5th 433, 448; *People v. Wilson* (2023) 14 Cal.5th 839, 868–869.)

Subsequently Senate Bill No. 775 (2021–2022 Reg. Sess.) extended the benefits of Senate Bill No. 1437 to convictions for attempted murder and manslaughter.  (Stats. 2021, ch. 551, § 2.)

The Legislature provided a procedure, now codified in section 1172.6, whereby defendants may petition the court to vacate their convictions and seek resentencing on any remaining counts if they show they could not now be convicted of murder or attempted murder because of the changes to sections 188 and 189.  (§ 1172.6, subd. (a).)  If a section 1172.6 petition includes the requisite information, the trial court must appoint counsel, upon request, to represent the defendant.  (*Lewis, supra*, 11 Cal.5th at pp. 962–963.)  If the court finds defendant has made a prima facie case of eligibility for relief, it must issue an order to show cause and conduct an evidentiary hearing to determine whether to vacate the conviction and resentence defendant on any remaining counts.  (§ 1172.6, subds. (c), (d)(1).)

At the evidentiary hearing the prosecution bears the burden of proving beyond a reasonable doubt that the defendant remains guilty of murder under California law despite the statutory changes effectuated by Senate Bill No. 1437. (§ 1172.6, subd. (d)(1)–(3).) At the hearing, "[t]he admission of evidence . . . shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens." (*Id.,* subd. (d)(3).)

Ordinarily, a trial court's denial of a section 1172.6 petition following an evidentiary hearing is reviewed for substantial evidence. Under this standard, we review the record in the light most favorable to the judgment below to determine whether it discloses substantial evidence – that is, evidence which is reasonable, credible, and of solid value – such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Reyes* (2023) 14 Cal.5th 981, 988 (*Reyes*).) We review the result the trial court reached, not its legal reasoning, and we may affirm on any ground supported by the record, unconstrained by the route the trial court took in getting there. (*Apex Solutions, Inc. v. Falls Lake Ins. Management Co., Inc.* (2024) 100 Cal.App.5th 1249, 1257; see *In re Baraka H.* (1992)

8

6 Cal.App.4th 1039, 1045.)  The focus at the evidentiary hearing phase of a section 1172.6 petition is on evidence made relevant by the amendments to the substantive definition of murder which, in the context of section 188, requires the prosecution to prove that all principals to the murder acted with malice aforethought. (*People v. Vargas* (2022) 84 Cal.App.5th 943, 952.)

B.    **Aiding and Abetting Murder**

To be guilty of murder as a direct aider and abettor after the passage of Senate Bill No. 1437, " 'the direct aider and abettor must, by words or conduct, aid the commission of the life-endangering *act*, not the result of that act.  The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit *the act*, intent to aid the perpetrator in the commission of *the act*, knowledge that *the act* is dangerous to human life, and acting in conscious disregard for human life.' " (*Reyes*, *supra*, 14 Cal.5th at p. 991.) Where the life-endangering act is a shooting, the aider and abettor must know the perpetrator intended to shoot at the victim, intend to aid the perpetrator in the shooting, know that the shooting was dangerous to life, and act in conscious disregard for life.  (*Id.* at p. 992.)  The elements of aiding and abetting were not modified or invalidated by the passage of Senate Bill No. 437; they remain viable.  (*People v. Coley* (2022) 77 Cal.App.5th 539, 546 [direct aiding and abetting remains a valid theory after the changes to sections 188 and 189].)

C.    **Analysis**

Rangel contends that because the jury found him not guilty of the lying-in-wait special circumstances, the trial court could not, as a matter of law, find that he and Lopez planned the

9

murder and that he personally had an intent to kill.  We disagree.

At the evidentiary hearing the prosecution presented alternative theories of Rangel's liability for Sidney Hall's murder: (1) Rangel acted as a direct aider and abettor, sharing the actual killer's specific intent to kill; or (2) Rangel committed a felony murder that occurred during the course of the robbery of the other witnesses that Hall was escorting outside to their car.  The trial court found Rangel and Lopez planned the murder during the 15-minute period they sat talking in their car after being ejected from the party.  It is undisputed that after those 15 minutes, both men came running out of the car openly armed and pointing their firearms at the exiting crowd.  Lopez chased and fired his gun at Hall while Rangel used his to threaten the dancer and bodyguard in the crowd, effectively preventing them from assisting the murder victim or interfering with the shooting.

The elements of the lying-in-wait special circumstance require an intentional murder, committed under circumstances which include (1) a concealment of purpose, (2) a substantial period of watching and waiting for an opportune time to act, and (3) a surprise attack on an unsuspecting victim from a position of advantage.  (CALCRIM No. 728; *People v. Johnson* (2016) 62 Cal.4th 600, 629; *People v. Morales* (1989) 48 Cal.3d 527, 557, disapproved on other grounds by *People v. Williams* (2010) 49 Cal.4th 405, 459.)  Rangel is mistaken in contending that an acquittal of the special circumstance of lying-in-wait murder necessarily precludes a conviction for aiding and abetting murder.  The elements of the two theories are very different.  As is apparent from the elements set out above, aiding and abetting a murder does not require a concealment of purpose, a surprise

10

attack on an unsuspecting victim from a position of advantage, or a substantial period of watching and waiting for an opportune time to act.

The evidence in the record substantially supports a finding beyond a reasonable doubt that Rangel aided and abetted the murder of Sidney Hall. He and Lopez retreated to their car after being ejected by Hall from the party. When Hall asked them to leave, he told them, "[W]e don't want any problems. It is all good." Lopez replied: "No. It is not. Fuck you. We are going to burn you." Lopez and Rangel retreated together to the car, remained there talking for 15 minutes, and, when they exited, they were both openly armed and threatening. Lopez immediately chased Hall, shooting and killing him. In the meantime, Rangel did nothing to impede Lopez's assault on Hall; instead, he held bystanders at gunpoint and threatened them with his firearm, which prevented them from assisting Hall or interfering with the shooting. Neither did Rangel come to Hall's aid after he was shot. After Hall's shooting and before leaving the scene together, Lopez and Rangel robbed the dancer and her bodyguard. That the trial court erroneously found that Rangel discharged his weapon after the jury found that allegation untrue is harmless. The facts amply support Rangel's conviction of Hall's murder as an aider and abettor, regardless of whether Rangel actually discharged his weapon. Because we conclude substantial evidence supports Rangel's conviction as an aider and abettor, we need not discuss the trial court's findings of felony murder under *Banks* and *Clark*.

We decline Rangel's request that we conduct an independent review of the record. (*Delgadillo, supra*, 14 Cal.5th at p. 232.)

11

## DISPOSITION

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STRATTON, P. J.

We concur:


WILEY, J.


RUBIN, J.*

---

\*      Retired Presiding Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.